**FIRST MISSOURI BANK AND TRUST COMPANY OF CREVE COEUR, Plaintiff,**

v.

**BAYLY, MARTIN & FAY AVIATION INSURANCE SERVICES, INC.,** Compagnie D'Assurances Maritimes Aerienne Et Terrestries **(C.A.M.A.T.),** La Foncierre, Assurances Generales De France, Groupe Des Assurances Nationales, Compagnie Francaise D'Assurances Europenennes, and Assurances Du Groupe De Paris, **Defendants.**

No. 82–917C(2).

United States District Court, E.D. Missouri.

Dec. 30, 1983.

David Sosne, Mann, Poger & Wittner, St. Louis, Mo., for plaintiff.

**634**

Frank N. Gundlach, St. Louis, Mo., for defendants.

### MEMORANDUM

FILIPPINE, District Judge.

This matter is before the Court for a decision on the merits after the parties have stipulated as to all facts. Plaintiff brings this action to recover under a policy of insurance issued by defendant Bayly, Martin & Fay Aviation Insurance Services, Inc. ("Bayly, Martin") as agent for the other named defendants ("underwriters") in this action. Plaintiff was named as a lienholder loss payee on said policy. After consideration of the stipulation of facts, the evidentiary materials submitted by the parties, the parties' briefs, and the applicable law, the Court enters the following findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure.

### FINDINGS OF FACT

1. Plaintiff is a Missouri corporation with its principal place of business in the State of Missouri.

2. Defendant Bayly, Martin is a California corporation with its principal place of business in the State of California.

3. Defendant underwriters are French corporations and are citizens of the Country of France.

4. On July 15, 1981, defendant Bayly, Martin, as agent for defendant underwriters issued an insurance policy numbered 1/Reinco 863/80 in favor of Ronald T. Farrish ("the Assured") to insure an airplane owned by Farrish ("covered airplane") against property damage and bodily injury to the extent of $1,000,000.00. Coverage under said policy was to begin on May 6, 1981, and end on May 6, 1982. The covered airplane was insured for $47,000.00. In the "Security Endorsement" of the policy, security on the policy is provided by defendant underwriters in the following percentages:

57.50%—C.A.M.A.T. (Compagnie D'Assurances Maritimes, Aeriennes et Terrestries)

9.50%—La Foncierre

11.00%—Assurances Generales de France

5.00%—Groupe des Assurances Nationales

15.00%—Compagnie Francaise D'Assurances Europenennes

2.00%—Assurances du Groupe de Paris

5. At the time defendant Bayly, Martin issued said insurance policy, the covered airplane was encumbered by a lien in favor of plaintiff in the amount of $40,267.40.

6. Plaintiff was designated as a lienholder/loss payee on the insurance policy to the extent of $35,000.00.

7. Contained within the body of said insurance policy is the following provision concerning cancellation of the policy as to the assured:

> This Certificate [of insurance] may also be cancelled, with or without the return or tender of the unearned premium by Underwriters, or by [Bayly, Martin] in their behalf by delivering to the Assured or by sending to the Assured by mail, registered or unregistered, at the Assured's address as shown herein, not less than 10 days' written notice stating when the cancellation shall be effective.

In the "Breach of Warranty Endorsement," attached to the policy, the following provision governs cancellation as to the lienholder:

> The Underwriters reserve right to cancel this policy at any time as provided by its terms but in such case notification shall be given [First Missouri Bank of Creve Coeur] when not less than (30) days thereafter such cancellation shall be effective as to the interest of said Lienholder therein....

8. The Court finds the credible evidence to show that defendant Bayly, Martin mailed to the Assured and plaintiff a notice of cancellation of said insurance policy on August 25, 1981. The notice stated that

cancellation would be effective September 25, 1981.

9. The Court finds the credible evidence to show that plaintiff could not have received said notice of cancellation prior to August 28, 1981.

10. On September 26, 1981, the covered airplane was damaged in Missouri due to no fault of plaintiff or the Assured.

11. Plaintiff made timely demand on defendants for payment of the insurance proceeds. Defendants have refused to make payment on the ground that the insurance policy was cancelled one day prior to the date the airplane was damaged.

12. Subsequently, plaintiff sold the aircraft to Hawke Airplanes, Inc. for the sum of $5,500.00, which represented the salvage value of the airplane.

13. After subtracting the sum of $5,500.00, the outstanding indebtedness of the assured to plaintiff exceeds $35,000.00.

14. At the time of the effective date of the insurance policy in question, May 6, 1981, Bayly, Martin had not communicated to plaintiff that the underwriters were the insurers of the covered airplane. Plaintiff reasonably believed that Bayly, Martin was the insurer until July, 1981, the date on which a copy of the insurance policy was received by plaintiff.

### CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

### I. *Liability*

■ The parties have stipulated that the primary issue before the Court is "whether the effective date of cancellation of a policy of insurance with respect to a loss payee or lienholder as a result of the nonpayment of the premiums by the insured is measured from the date of mailing by the insurer of the notice of cancellation or from the date of the receipt of the notice of cancellation by the lienholder."

After careful consideration of the pertinent terms of the insurance policy and the applicable law, the Court finds that the controlling date is the date of receipt.

Although the parties have not cited nor has the Court found any Missouri cases directly on point, the Supreme Court of Tennessee has indirectly considered the primary issue before this Court in a case with similar facts.

In *Calvert Fire Insurance Co. v. American National Bank & Trust Co.,* 222 Tenn. 515, 438 S.W.2d 545 (1969), the sole question presented to the Court was whether mailing of a notice of cancellation to the lienholder or loss payee of an insurance policy constituted sufficient notice to effect a cancellation of the lienholder's interest in the policy when the lienholder had not in fact received said notice. The provisions of the insurance policy in question, like the insurance policy in the case *sub judice,* contained separate provisions governing cancellation as to the named insured and the lienholder. As to the named insured, the cancellation provision provided that "[t]his policy may be cancelled by the company by mailing to the insured ... at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice." As to the lienholder, the applicable provision provided that

[t]he company reserves the right to cancel such policy at any time as provided by its terms, but in such case the company shall notify the lienholder when not less than ten days thereafter such cancellation shall be effective as to the interest of said lienholder therein and the company shall have the right, on like notice, to cancel the agreement.

"After having studied the matter for several days and giving it a good deal of thought as well as research," the court held in an opinion written by Chief Justice Burnett that receipt of the cancellation notice by the lienholder was essential to effect a cancellation of the lienholder's interest in the policy. The court distinguished the two cancellation provisions of the poli-

cy. The court observed that, as to the named insured, the policy provided that "notice" was sufficient, but as to the lienholder, the policy contained the term "notify." The court stated that the word "notice" is not synonymous with the word "notify." "Notification" as defined in Webster's Third International Dictionary, the court stated, is "the act or instance of notifying" and "the act of giving official notice or information." The court indicated, therefore, that "notification" was "entirely different" than "notice" and concluded that the lienor should have actual notice of the cancellation. The court also cited the general rule that ambiguous provisions in insurance policies are to be construed against the insurance company.

Like the insurance policy in *Calvert Fire,* the policy in the present case contains separate cancellation provisions as to the assured and the lienholder. Also as in *Calvert Fire,* the cancellation provision in this case as to the assured provides that "notice" of cancellation must be given, while as to the lienholder "notification" is required. Under the circumstances, this Court finds the rationale of *Calvert Fire* to be persuasive. Accordingly, the Court finds that the effective date of cancellation in the case *sub judice* was 30 days after plaintiff *received* notice of cancellation. Because plaintiff could not have received notice of cancellation prior to August 28, 1981, and because the covered airplane was damaged on September 26, 1981, the Court finds the insurance policy was in full force and effect as to plaintiff on the date the airplane was damaged.

This Court's holding that the date of receipt is the controlling date for measuring the date of cancellation is supported by two widely respected treatises on insurance law. In 6A Appleman, *Insurance Law and Practice* § 4186, at p. 558, the author states: "A notice of cancellation must be given the stipulated number of days before the loss, in order to cancel the policy. (Citation omitted.) *And the required period of time begins to run from the receipt of the notice by the insured."* (Citation omitted.) (Emphasis added.) *Id.* Similarly, in

17 *Couch on Insurance* 2d § 67:177, p. 645, the author states that

> where the notice of cancellation does not specify the date as of which the cancellation is to be effective, the reasonable construction should be that any time allowed the insured should run from the receipt of the notice, for otherwise, the period given the insured in which to act, whether it is a specified number of days, or a reasonable time, would be reduced by the time required for the mailing.

*Id.*

This view is again expressed in § 67:189, p. 657 of 17 *Couch on Insurance:*

> Where a cancellation of a policy is not effective immediately or as of a fixed date, but rather is to take effect a number of days after such notice is given. The time of receipt of the notice is the significant date in determining when the period begins to run.

The only case cited by defendants which involves notice of cancellation to a lienholder implicitly supports this Court's holding. In *First National Bank of Independent v. Mid-Century Insurance Company,* 559 S.W.2d 50 (Mo.App.1977), the court considered whether the insurer had presented sufficient evidence to establish that it had mailed a notice of cancellation to the lienholder. The Court held that sufficient evidence had been presented. 559 S.W.2d at 52. The reason the court examined this issue, however, was because of the general rule that proof of mailing gives rise to a *presumption of delivery.* The court recognized that the critical issue in the case was "whether or not notice of cancellation was *received* by the [lienholder]." 559 S.W.2d at 50.

In support of their argument that the controlling date is the date of mailing, defendants cite Section 375.005, Mo.Rev.Stat. This section provides: *"Proof of notice, how made.* Proof of mailing notice of cancellation, or of intention not to renew or of reasons for cancellation, to the named insured at the address shown in the policy, shall be sufficient proof of notice."

The Court believes this statute does not support defendants' contention for several reasons. First, the statute by its terms is applicable only to the named insured. Plaintiff in this case is not a named insured, but a lienholder/loss payee.

Second, even if the statute applied to lienholders, the Court is not convinced that this statute pertains at all to the question presented in the case at bar. The statute appears to govern only the manner in which notice may be proved—not the date from which the effective date of cancellation is measured. *See* 17 *Couch on Insurance 2d, supra* at § 67:179, p. 645.

Finally, even if the statute was controlling on the question presented as a general principal of law, there is nothing to prevent the parties from agreeing that the controlling date is the date of receipt. This Court has so construed the lienholder cancellation provision in the insurance policy in question.

■ For the foregoing reasons, the Court finds that the insurance policy was in full force and effect as to plaintiff's interest on September 26, 1983, the date the covered airplane was damaged.

Because Bayly, Martin was acting as an agent for an undisclosed principal at the time of the effective date of the insurance policy, it is liable to plaintiff for the amount of plaintiff's interest in the policy. *See* 4 *Couch on Insurance* § 26:457, p. 455; Rest. of Agency, 2d §§ 322, 337. The underwriters are clearly liable to plaintiff under the express terms of the policy in the percentages set forth in the "Security Endorsement" of said policy.

II. *Damages*

■ Defendant Bayly, Martin argues in its post-trial brief that the salvage value of the airplane must be subtracted from the "amount of lien" specified in the Breach of Warranty Endorsement in calculating the amount of recoverable damages to which plaintiff is entitled. The Court disagrees.

The policy expressly provides that "[i]f the Aircraft is mortgaged or encumbered any loss covered hereunder is payable as interest may appear to the Assured and [plaintiff]." Clearly, plaintiff's "interest" is in excess of the amount of its interest in the policy since, after subtracting the salvage value, the assured's outstanding indebtedness to plaintiff exceeds $35,000.00. The Court, therefore, finds that plaintiff is entitled to $35,000.00. *Cf.* 6 Appleman, *Insurance Law and Practice* § 3892 n. 7; 15 *Couch on Insurance* § 54.221 n. 17.

Finally, the Court finds that defendants' refusal to pay plaintiff's claims was not "vexatious" within the meaning of Section 375.420, Mo.Rev.Stat., and will accordingly deny plaintiff's prayer for additional damages pursuant to this statute.

## JUDGMENT

In accordance with the Memorandum filed this day and incorporated herein,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that plaintiff shall have judgment against defendant Bayly, Martin & Fay Aviation Insurance Services, Inc., in the sum of $35,000.00, against defendant Compagnie D'Assurances Maritimes Aerienne et Terrestries in the sum of $20,125.00, against defendant La Foncierre in the sum of $3,325.00, against defendant Assurances Generales de France in the sum of $3,850.00, against defendant Groupe des Assurances Nationales in the sum of $1,750.00, against defendant Compagnie Francaise d'Assurances Europenennes in the sum of $5,250.00, and against defendant Assurances du Groupe de Paris in the sum of $700.00.

IT IS FURTHER ORDERED that costs be and are taxed to defendants.