CALVERT FIRE INSURANCE COMPANY

*v.*

AMERICAN NATIONAL BANK AND TRUST COMPANY et al.

438 S.W.2d 545.

(*Knoxville*, September Term, 1968.)

Opinion filed February 28, 1969.

SAMUEL R. ANDERSON, Chattanooga, for appellants; CUNNINGHAM, CRUTCHFIELD & LUTHER, Chattanooga, of counsel.

RICHARD B. GOSSETT, Chattanooga, for appellee; BISHOP, THOMAS, LIETNER, MANN & MILBURN, Chattanooga, of counsel.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

The sole question here is whether or not under the terms of the policy the mailing of a notice of cancellation to the lien holder or loss payee of an insurance policy is notice to said lien holder or loss payee when the only proof with reference to their having said notice is that the insurance company mailed said notice, when as a matter of fact it is stipulated that they did not receive such notice. The Chancellor held that under the terms of this policy it was necessary for the lien holder to have said notice and an appeal has been seasonably perfected.

This policy of insurance was for physical damage to an automobile which named as insured one, T. W. King,

and the American National Bank as loss payee. Some two months after the policy was issued the insurance company deposited a "Notice of Cancellation" in the United States Mail and received a receipt therefor. One of these notices was addressed to the named insured, King, and one notice was addressed to the lienor, the bank. It was agreed as far as King was concerned that the depositing of this notice in the United States mail was sufficient and he had no further claim on the party. The question then arose as to whether or not the cancellation was good as to the lienor who did not get this notice.

The main policy among other things had a provision, which is condition 14 and is entitled "Cancellation", and the part of consequence in this lawsuit is:

"This policy may be canceled by the company by mailing to the insured named in Item 1 of the declarations at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. *The mailing of notice as aforesaid shall be sufficient proof of notice.* The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period." (Emphasis ours.)

There was physically attached to this policy an endorsement entitled, "Loss Payable Clause", which sets forth in rather minute detail the interest of the lienor bank and it further provided:

"The company reserves the right to cancel such policy at any time as provided by its terms, but in such case *the company shall notify the Lienholder when not less than ten days thereafter such cancellation shall be*

*effective as to the interest of said Lienholder therein* and the company shall have the right, on like notice, to cancel the agreement." (Emphasis ours.)

Thus we come to the only question presented to us which is, whether the cancellation notice had to be actually received by the bank to be effective or whether the mere mailing of the notice was sufficient to bring about a cancellation of the policy.

We have quoted above what is probably known as a "standard cancellation clause". Most of the courts which have had occasion to construe this type of provision have determined that the receipt of notice of cancellation is not a condition precedent to the effect of the cancellation of the insurance. See our case of *Cherokee Ins. Co. v. Hardin,* 202 Tenn. 110, 302 S.W.2d 817. See likewise an annotation in 64 A.L.R.2d 982, and various cases cited therein. These decisions as well as our *Cherokee* decision have generally rested on the proposition that the clear terms of a contract must be enforced as written, the courts finding no ambiguity in this clause. These decisions are generally rested on the proposition that the clear terms of the contract must be enforced as written. In other jurisdictions it has been held that the clause conflicted with statutory provisions requiring actual notice of cancellation, but this does not concern us here because, we, in the *Cherokee* case, had almost the identical language as here, that is, "the mailing of notice as aforesaid shall be sufficient proof of notice."

In the present case though we have an entirely different situation. Here we have the provision in the policy about cancellation and the other provision in the rider or the part that governs the lienor. It is perfectly obvious that

these two provisions are entirely different. In the clause that we have quoted above from the endorsement it is provided that the company reserves the right to cancel provided they do it under the terms of the policy "but in such case the company shall notify the Lienholder when not less than ten days thereafter such cancellation shall be effective as to the interest of said Lienholder therein and the company shall have the right, on like notice, to cancel the agreement."

■ Obviously, even to a casual reader, these two sections are entirely different. The rider provides that the insurance company, appellant here, shall "notify the Lienholder" etc. This word, "notify," is not synonymous with the word, "notice." Notification according to Webster's Third International Dictionary is "the act or instant of notifying." It says again that this notification is "the act of giving official notice or information," and by use of this word "notify," as distinguished from the word, "notice," as used in the paragraph in reference to cancellation of the policy, it was indicated that those drawing this policy and its rider, as attached thereto, meant something entirely different in the two terms as used.

In one instance, that is notifying the owner of the policy, the person it is written to, all the company has to do is just show that they deposited this notice in the mail and that was sufficient, but when we come to the rider in favor of the lien holder, the loss payee, it seems that it was thought by the draftsman there should be a stronger provision on the question of cancellation so as to give the person who has put the money in a chance to reinsure his product or what he was covering and thus it was that this language was used so that the lienor should be notified. In other words, the lienor should

actually have notice that this has been done when it is to be effective within ten days.

In *Haldane v. United States,* 10 Cir., 69 F. 819, at page 822, the court said:

"The doctrine is well established that, when a statute requires notice to be given to a person for the purpose of creating a liability, personal notice is intended, unless some other form of notice is expressly authorized by the statute. * * * The same rule, we think, is applicable to notices required to be given by the terms of an express contract."

This reasoning is indeed applicable to the factual situation of the present case.

■ It must be remembered, too, that this policy and the "Loss Payable Clause" attached to it, and which is protection for the lienor, was drafted by the insurance company's attorneys, and it is rather obvious in doing so they were intending to benefit the insurance company only and it should be construed most strongly against it. *Alsup v. Travelers Ins. Co.,* 196 Tenn. 346, 268 S.W.2d 90, and in the same volume the same thing was held in *Interstate Life & Acc. Ins. Co. v. Gann,* 196 Tenn. 422, 268 S.W.2d 336, 44 A.L.R.2d 1230, in an opinion that was designated for publication after the death of Mr. Justice Gailor, he having prepared the opinion for the Court in his lifetime.

The argument of the insurance company is that this loss payee provision, which is attached to the policy, may be canceled at any time as provided by its terms and it is argued very forcibly that its terms are contained in condition 14 on cancellation, above copied, and that under

that provision of the policy the mailing of notice thereof as distinguished from a receipt effects the cancellation of the policy. As said above, we cannot agree to this because the two provisions are entirely different and they were prepared by the insurance company and its counsel and consequently they are binding on the company.

In this loss payable clause, which is attached, it provides that the company shall notify the loss payee of cancellation and it is argued that when the notice is put in the mail that this complies with the terms of the policy and meets the requirement of the loss payable clause that the company shall ''notify'' the lien holder, and it is said in view of this provision that notice will be presumed to have been given by showing that this was put in the mail and the company would not have to do anything else except mail this to the lien holder as well as to King, the person who had the policy. It is argued that the lienor is not entitled to any more notice than the named insured, but as we have said in drafting the policy they didn't draft these provisions as to the lienor by the same language or anything else as provided as to the insured.

When an insurance company seeks to take advantage of a cancellation provision in its policy the burden is on the insurance company to prove by the preponderance of the evidence that it complied with the terms of the cancellation provision in the policy. *State Automobile Mutual Ins. Co. v. Lloyd,* 54 Tenn.App. 587, 393 S.W.2d 17. In our view the language as used in this policy means exactly what we have said above. In other words the lienor, the Lienholder, is to receive notice of such cancellation. This is what the policy meant, and we do not think there is any ambiguity in this, but it would

be ambiguous if we try to read it along the line the insurance company takes in their argument herein. The cases above, *Alsup,* etc., which have long been the law in this State are particularly applicable.

After having studied the matter for several days and giving it a good deal of thought as well as research, reading the able briefs, and making an independent investigation, we are convinced that the Chancellor is correct and his judgment will be affirmed.