**SOUTHERN REGION INDUSTRIAL REALTY, INC., Plaintiff-Appellee,**

v.

**CHATTANOOGA WAREHOUSE AND COLD STORAGE COMPANY, INC., Defendant-Appellant.**

Court of Appeals of Tennessee, Eastern Section.

July 23, 1980.

Permission to Appeal Denied by Supreme Court Feb. 23, 1981.

Thomas, Mann & Gossett, Chattanooga, for defendant-appellant.

Hall, Haynes, Lusk & Foster, Chattanooga, for plaintiff-appellee.

### OPINION

FRANKS, Judge.

Defendant-lessee has appealed the trial court's determinations that lessee did not exercise its option to renew a five-year lease and plaintiff-lessor is entitled to possession of the property, defendant being a tenant at will.

Lessor, a Georgia corporation, owns a large tract of land, improved by a warehousing facility, comprising the 1300 block of Market Street in Chattanooga; its principal office is in Washington but it maintains an office in Atlanta. Lessee is a Tennessee corporation engaged in a general warehousing business.

On May 22, 1974, the parties entered the lease for the warehousing facility, which includes a cold storage plant. The relationship of landlord-tenant had existed between the parties since 1963, with prior written leases.

The lease provided a primary term of five years commencing October 1, 1973, with a right to renew for an additional five years, beginning at the expiration of the primary term provided "Lessee shall give Lessor a written notice of its election to renew said lease at least 90 days prior to the expiration of said primary term;". In order to properly exercise the option, defendant was required to give notice in writing on or before July 2, 1978.

W. C. Hudlow, president of lessee corporation, testified that on June 22, 1978, he dictated a recording instructing his secretary to prepare a letter advising plaintiff of the intended renewal and to address the letter to plaintiff at its Atlanta office. The letter was prepared by his secretary and, on June 26, Hudlow signed the letter and his secretary testified that in the ordinary course of business on that date the letter was stamped and put in the office mail box at the office switchboard. Another employee of defendant testified that it was his duty to pick up the mail at 4:30 p. m., each day from the box and deliver it to the post office. He collected the mail from the box on that date and placed it in the post office mail bag, secured it and delivered it by automobile to the Main Street post office. The letter was not returned to the sender but lessor's agents testified that a search was made but the letter was not found and there was no record of the letter ever having been received by the Atlanta office.

The property manager in the Atlanta office wrote defendant on August 1, advising the lease was terminated as of September 30, since the defendant had failed to timely exercise its option to renew. On August 3, 1978, Hudlow responded by letter, enclosing a copy of the notice of renewal of June 23, and on August 9, the property manager responded by letter to lessee reiterating that no timely notice had been received and that the lease would terminate on September 30, 1978. Lessee refused to vacate the premises and this suit was filed on October 2, 1978.

The chancellor concluded that under the terms of the lease a written notice prior to the final 90–days of the lease was a condition precedent to renewal and defendant failed to renew the lease according to its terms. He further concluded the agreement mandated that the written notice be sent to plaintiff's Washington, D.C., address. In this regard, the lease, after providing that certain notices should be sent to the industrial property manager in Atlanta, states "Any other notice to be given by Lessee hereunder shall be sufficient if addressed to Lessor at Post Office Box 1808, Washington, D.C., 20013, and any notice to be given by Lessor hereunder shall be sufficient if addressed to Lessee at the above mentioned premises." We agree with the chancellor's conclusion that the giving of the notice by defendant of its election to renew the lease was a condition precedent to renewal, since it is the law of this state that where a lessee has a right of renewal, provided he gives the lessor notice by a specified time that he intends to exercise such privilege, the giving of the notice is a condition precedent which must be complied

with in the stipulated time. *American Oil Co. v. Rasar,* 203 Tenn. 37, 308 S.W.2d 486 (1957). However, we differ with his conclusion that "the contract says written notice must be made and it must be sent to the Washington, D.C., office." We do not read the language of the lease as requiring lessee to send written notice of its election to renew to the Washington office. It merely suggests a permitted place and method of giving notice and does not preclude sending notice to other offices of the lessor. *See* 17 C.J.S., *Contracts,* § 42.

Defendant was required to "give" written notice at least 90 days prior to the expiration of the primary term. Defendant contends, however, that it complied with the notice requirement by mailing the letter to lessor's Atlanta office and that it makes no difference the letter was not, in fact, received. We cannot agree.

■ A presumption of the due receipt of a letter arises upon proof that such letter was deposited in the post office, properly stamped and correctly addressed. *W. E. Richmond & Co. v. Security Nat. Bk.,* 16 Tenn.App. 414, 64 S.W.2d 863 (1933); 29 Am.Jur.2d, *Evidence,* § 194. And a presumption that a letter was mailed may arise from the testimony of an officer of a corporation that he dictated and signed the letter and placed it in the regular course for mailing. *Myers v. Moore-Kile Co.,* 279 F. 233 (5th Cir. 1922). *See also* 29 Am.Jur.2d, *Evidence,* § 193; McCormick, *Law of Evidence, Habit and Custom,* § 162.

■ The chancellor did not accord the defendant any of these presumptions and stated there was no "proof positive that the letter was seasonably mailed, ..." The rule that notice is operative on mailing does not extend to notices of acceptance in already binding option contracts. *Compania De Astral, S. A. v. Boston Metals Co.,* 205 Md. 237, 107 A.2d 357, 49 A.L.R.2d 646 (1954). *Also see* 17 Am.Jur.2d, *Contracts,* § 60.

■ Professor Corbin states the rule thusly as to option contracts:

But when, by the terms of an already consummated contract it is provided that one party shall have power to produce certain legal results by giving notice, it is usually held that this means notice received in fact and not merely notice mailed...

If in an option contract the duty of the promisor is conditional on "notice within 30 days", does this mean notice received or notice properly mailed? It is believed that, in the absence of an expression of contrary intention, it should be held that the notice must be received.... The rule that an acceptance by post is operative on mailing was itself subjected to severe criticism; and, even though it may now be regarded as settled, it should not be extended to notice of acceptance in already binding option contracts.

This rule obtains in Tennessee in contracts requiring notice be "given". *See Calvert Ins. Co. v. Amer. Nat. Bank,* 222 Tenn. 515, 438 S.W.2d 545 (1969). *See also* 64 A.L.R.2d 982, *Insurance—Cancellation—Notice by Mail,* § 4. We agree with the chancellor's conclusion, therefore, that the defendant did not comply with the condition precedent since it did not "give notice" of its election to renew to plaintiff within the time specified in the lease.

The chancellor in his memorandum and judgment, however, pretermitted the issue of whether the court should apply principles of equity to this fact situation to avoid forfeiture of a valuable lease.

■ While the parties cite and argue cases from other jurisdictions, the applicable rule in Tennessee is stated in *American Oil Co. v. Rasar, supra,* 203 Tenn. at page 45, 308 S.W.2d 486, of that opinion, where the Supreme Court, quoting from an *American Law Report,* Second Series, states:

"It is quite generally recognized that where a lessee has a right of renewal provided he gives the lessor notice by a specified time that he intends to exercise such privilege, the giving of the notice is a condition precedent which must be complied with within the stipulated time, and that *in the absence of special circum-*

*stances warranting a court of equity in granting relief* the right of a renewal is lost if the notice is not given in accordance with the provisions of the lease." [Emphasis supplied.]

■ We believe the special circumstances of this case warrant equitable relief. This is not a situation of mere forgetfulness where the lessee simply failed to timely give notice of its decision to renew the lease, which would not be a basis to afford equitable relief. *McClellan v. Ashley*, 200 Va. 38, 104 S.E.2d 55 (1958). To the contrary, Hudlow dictated and signed the letter and lessee's agents testified that they discharged their customary duties in regard to processing and mailing lessee's correspondence. The chancellor speculated on what may have happened to the letter:

> Now, the Court inquires of itself, did the secretary forget to stamp the letter? Did the letter fall on the floor at the switchboard girl's desk? Did someone remove the letter before it was picked up out of the corrugated box to be placed in the canvas bag? Did the letter fall out of the mail sack on the way to the post office? Who knows?

If any of these or other untoward events actually occurred, then the non-delivery of the letter would have been accidental and historically a Court of Equity relieves against accidents. *Gibson's Suits in Chancery*, 5th ed., vol. 2, § 985. Nor should the use or attempted use of the mails in this case be a basis to deny defendant equitable relief. In the case *sub judice*, the lease was prepared by lessor and it may be reasonably inferred from its terms that it was within the contemplation of the parties to use the mails for giving notice under the provisions of the lease. In *Sy Jack Rlty. Co. v. Pergament Syosset Corp.*, 27 N.Y.2d 449, 318 N.Y. S.2d 720, 267 N.E.2d 462 (1971), a case factually similar, the court observed: "If reliance on the mails could possibly be characterized as fault, it is 'excusable fault' (*Jones v. Gianferante*, 305 N.Y. 135, 138, 111 N.E.2d 419) and should not operate to deprive the defendant of a valuable asset."

Hudlow, upon being advised that timely written notice had not been received by the lessor, by return mail notified lessor of his desire to renew the option, which transpired approximately 58 days before expiration of the primary lease.

Hudlow testified the defendant assisted in the design of the food terminal and assumed the responsibility for securing a contractor to build the terminal. He testified:

> We took the responsibility of securing a contractor and we were actually approached by the Southern to build a food terminal similar to the one that they had in Birmingham, Alabama, which was based upon the premise that the tenants of the food terminal would, in a period of time, own the property.
>
> The theory being that the railroad would build the property, sell it to the food terminal group, lease it from the food terminal—

Defendant has been in possession of the facilities pursuant to lease agreements with lessor since 1963; no other facilities of this nature exist in the Chattanooga area and, according to Hudlow, the cost of building a similar facility would be in excess of six million dollars. It appears that termination of the lease would result either in extreme economic hardship to defendant or a complete loss of the business operation.

There is no evidence that any loss would result to lessor should lessee be permitted to renew the lease for an additional term. The only evidence in this regard is that the lessor began looking for a new tenant when the lease was not renewed according to its terms.

There was testimony that defendant was in arrears on rental payments at certain times prior to the hearing of this cause but this testimony does not raise an inference of inequity; the lease agreement provides for remedies should defendant default in the payment of rent.

■ Although defendant failed to comply with the provisions of the lease requiring that it give written notice at least 90 days prior to the expiration of the primary term, defendant is entitled to the benefit of the

equitable rule that relieves a tenant from literal compliance with the terms of the lease when a good faith effort has been made to comply and the tenant is not guilty of willful or gross negligence, *F. B. Fountain Co. v. Stein*, 97 Conn. 619, 118 A. 47 (1922), and the lessor has not been prejudiced by the delayed notice. *See* cases 44 A.L.R.2d 1359 Anno: *Lease—Notice to Renew.*

The judgment is reversed and the cause is remanded to chancery court to enter a judgment for lessee in accordance with the terms of the primary lease.

Costs incident to the appeal are assessed against plaintiff-appellee.

PARROT, P. J., and SANDERS, J., concur.