**Reba D. Tarpley PINNEY,**
**Plaintiff-Appellee,**

v.

**Bobby V. TARPLEY,**
**Defendant-Appellant.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Dec. 7, 1984.

Application for Permission to Appeal
Denied by Supreme Court
Feb. 25, 1985.

James C. Cope, Murfreesboro, for plaintiff-appellee.

Larry D. Brandon, Murfreesboro, for defendant-appellant.

ABRIDGED OPINION

TODD, Presiding Judge.

(With concurrence of participating judges, the original opinion has been abridged for publication.)

This appeal involves proceedings to enforce the provisions of a property settlement agreement embodied in a divorce decree. From a decree favorable to the plaintiff, the defendant has appealed.

The parties were divorced on May 19, 1980. The decree approved and included a property settlement executed on March 17, 1980 which provided that defendant would pay and hold plaintiff harmless from a second mortgage of $80,000 on property received by plaintiff. Defendant failed to pay said second mortgage, foreclosure was threatened, and plaintiff was required to refinance both first and second mortgages to avoid foreclosure. Plaintiff filed a "Petition for Contempt and Enforcement of Lien" seeking judgment for $125,000 and a lien upon defendant's property.

Defendant answered the petition admitting his obligation in respect to the second mortgage, but asserting an affirmative defense that the obligation had been discharged by conveying certain property to the plaintiff. Defendant also counterclaimed for damages for breach of an al-

leged option agreement whereby plaintiff agreed to convey to defendant all of the property received by her in the divorce decree for an agreed price.

The Chancellor awarded plaintiff judgment against defendant for $90,249.23 and dismissed the counterclaim.

Appellant's first issue complains of the finding of the Chancellor that plaintiff's claim was not extinguished by accord and satisfaction.

The property settlement and decree required that defendant pay and hold plaintiff harmless from a mortgage debt upon 5 duplexes which were awarded to plaintiff. The debt was $80,000 at the time of the divorce. Interest was payable quarterly and $10,000 principal was due semiannually. Defendant paid one installment of $10,000 and thereafter defaulted.

Defendant told plaintiff that he was unable to honor his obligation and requested that she "take over" payment of the mortgage. Plaintiff proposed that defendant convey a sufficient amount of property in exchange for a release of defendant from his obligation to pay the mortgage. Defendant proposed that he convey 2 properties, 1446 Bradyville and 1202 Lakeshore. Plaintiff declined, stating that the properties were not worth the 70,000 due on the mortgage. Plaintiff did offer to accept the property plus $10,000 cash.

Thereafter plaintiff met with defendant's attorney who delivered to her two executed deeds to the two properties together with a proposed written settlement agreement. The $10,000 was not tendered. Plaintiff informed defendant's counsel that she would not sign the agreement because "we are not in agreement". She did accept the two deeds and title papers, but left the agreement unsigned with the attorney. She and her husband were obliged to obtain a loan to pay off the mortgage the following day. She placed the deeds in her safety deposit box "so my estate wouldn't be cheated in case something happened", as she was about to leave on a trip. Upon her return she and defendant's attorney resumed negotiations. Defendant's attor-

ney offered $10,000 cash in addition to the property, but plaintiff refused it because of the additional expense of obtaining the new loan to pay off the mortgage. No agreement was ever reached as to the terms of settlement, and the deeds were ultimately returned after the beginning of this suit. She never had the keys to the two properties and never exercised any dominion over them.

■ In support of his first issue, defendant argues that there was an accord and satisfaction because plaintiff indicated initially what was required to satisfy her, but later changed her mind. The Trial Court found no such enforceable meeting of the minds, and this Court agrees.

Defendant cites *Lytle v. Clopton,* 149 Tenn. 655, 665, 261 S.W. 664, 1923. This was an action to collect the fee of an associate attorney retained by consent of the client who pled accord and satisfaction which consisted of sending the attorney a note of a third party for $612.00 which the client considered adequate pay. The attorney accepted and collected the note as part payment but insisted upon more. The Supreme Court approved a $10,000 fee for the lawyer and said:

"An accord is an agreement whereby one of the parties undertakes to give or perform, and the other to accept in satisfaction of a claim, liquidated or in dispute, and arising either from contract or from tort, something other than or different from what he is or considers himself entitled to; and a satisfaction is the execution of such agreement."

. . . .

"To constitute a valid accord and satisfaction it is also essential that what is given or agreed to be performed shall be offered as a satisfaction and extinction of the original demand; that the debtor shall intend it as a satisfaction of such obligation, and that such intention shall be made known to the creditor in some unmistakable manner. It is equally essential that the creditor shall have accepted it with the intention that it should

operate as a satisfaction. Both the giving and the acceptance in satisfaction are essential elements, and if they be lacking there can be no accord and satisfaction. The intention of the parties, which is of course controlling, must be determined from all the circumstances attending the transaction."

This record does not show that plaintiff accepted the two deeds in settlement. On the contrary, she specifically refused to sign a release and kept the deeds for "security" in the evident hope that defendant would supplement the deeds with an acceptable amount of cash. This is similar to the action of the lawyer in *Lytle v. Clopton.* He accepted the note but advised the client that it was not in settlement.

Defendant also cites *Cole v. Henderson,* 61 Tenn.App. 390, 454 S.W.2d 374 (1970). In that case, the debtor sent a check marked "commission in full", and the check was accepted and cashed by the creditor. Based upon TCA 47–15–103 (written contracts prima facie evidence of consideration) and cited authorities, this Court held:

> The check sent to this plaintiff was an offer. At first he did not accept it, but he did not reject it, for he kept the offer (check) and the means of accepting the offer (endorsement and cashing) within his power and control. Therefore, the initial offer was a continuing offer, so long as plaintiff had the check. When he elected to endorse the check, he accepted the offer; and the accord was complete. The cashing of the check completed the satisfaction of the accord and the debt affected thereby.

In the present case, there was no such written release; indeed, the plaintiff specifically refused to sign the release.

Moreover, the acceptance of possession of the deeds was not under the circumstances such an act of acquiescence as would bind the plaintiff. The deeds were never recorded; therefore, the defendant remained free to convey the property otherwise. There was no delivery of keys or other indicia of possession or control and, so far as this record shows, the defendant continued to collect rents from the property. In short, the present case is distinguishable from *Cole v. Henderson* by the failure of plaintiff to register the deeds which would have been equivalent to the cashing of the check in *Cole v. Henderson.*

■ In order to establish accord and satisfaction, it must be shown that the creditor accepted a payment with the intention that it should operate as a satisfaction. *Willis v. Unicoi County,* 166 Tenn. 639, 64 S.W.2d 200, 202 (1933).

■ The party asserting the defense of accord and satisfaction has the burden of showing by a preponderance of the evidence that the parties intended to effect a satisfaction. *Rhea v. Marko Construction Company,* Tenn.1983, 652 S.W.2d 332.

Defendant has not carried that burden. Defendant's first issue is without merit.

Defendants second issue complains of the allowance of costs of refinancing as an element of damage.

The property settlement agreement contains the following language:

> 5. The Wife agrees to assume the *first* mortgage indebtedness which is secured by the property set forth in Schedule B, and the Husband agrees to assume *all other indebtednesses of the parties;* and each party agrees to *hold* the other *harmless* from any action arising out of their failure to pay said indebtedness. (Emphasis supplied.)

■ Schedule B includes the property received by plaintiff. There was a *first* mortgage on that property which the plaintiff assumed in the above quoted portion of the settlement agreement. However, there was also a *second mortgage* on the same property on which both parties were obligated, and this second mortgage was included in the "all other indebtedness of the parties" which defendant agreed to assume and "hold the other (wife) harmless" from his failure to do so. The use of the words "any action" are not deemed to restrict the obligation to damages resulting from a

suit. The threat of foreclosure by the mortgage is deemed to be included in the words, "any action".

■ An agreement to "hold harmless" is a covenant to assume all of the expenses of the stated peril. *Winchester Repeating Arms Co. v. U.S.*, 51 Ct.Cl. 118.

■ "Hold harmless" means to fully compensate the indemnitee for all loss or expense. *First National Bank v. Bankers' Trust Co.*, 151 Misc. 233, 271 N.Y.S. 191, 197 (1934) and authorities cited therein. *New York Central R. Co. v. General Motors Corp.*, D.C.Ohio, 182 F.Supp. 273, 291 (1960).

■ An agreement to "hold harmless" is a contract of indemnity which requires the indemnitor to prevent loss to the indemnitee or to reimburse the indemnitee for all losses suffered from the designated peril.

■ In order to avoid foreclosure of the second mortgage which defendant had agreed to pay, it was necessary for plaintiff to obtain a new first mortgage for a sufficient amount to pay both first and second mortgage. The interest rate on the new consolidated debt was greater than the rate on the old first mortgage. Therefore, as a result of defendant's failure to pay the principal and interest on the second mortgage, plaintiff was required to pay not only the principal and interest on the second mortgage but also additional interest on the amount of the first mortgage over and above the lower interest which would have continued in effect if defendant had not defaulted on his obligation on the second mortgage. In addition, plaintiff was required to pay expenses of the new consolidated loan which she would not have been required to pay if defendant had not defaulted. Each of these extra expenses were directly attributable to defendant's default and were therefore reasonably within the contemplation of the parties as being recoverable under their "hold harmless" agreement.

Defendant's argument in support of his second issue would be correct if the agreement had been limited to payment of a specified sum, but the rule is otherwise where such an agreement is coupled with a "hold harmless" covenant.

Defendant's second issue is found to be without merit.

■ Defendant's third, fourth and fifth issues relate to an alleged option agreement. Defendant's brief cites no part of the record where evidence of such agreement may be found. Defendant cites page 56 of the record which is an exhibit to the counterclaim of defendant. Merely attaching a document to a pleading does not place that document in evidence. This Court would be justified in disregarding issues 3, 4 and 5 on this ground. Rule 6B–Rules of this Court.

However, said document is found in the exhibits to the transcript. It was signed by the parties on May 20, 1980, after the divorce decree. By the document plaintiff granted to defendant a 13 month option to buy 5 tracts of realty for $250,000.00.

During the thirteenth month after execution of the agreement, plaintiff asked defendant whether he intended to exercise the option. He answered in the affirmative. Plaintiff asserted that the understanding included the assumption of existing mortgages on the property in addition to the cash consideration of $250,000.00. When defendant disagreed with this version of the agreement, plaintiff told defendant that "he could forget it on those terms", meaning the defendant's insistence upon purchase free of mortgages.

Plaintiff admitted in her testimony that she told defendant "The deal is off", and that if defendant had offered her $250,-000.00 in cash as per the contract, she would have refused.

Defendant never gave a timely formal notice of exercise of the option or actually tendered performance.

The Trial Court found that the option was unenforceable for lack of consideration.

Defendant insists that plaintiff's defense of lack of consideration is not available to

her because it was not pled as a defense. Plaintiff insists that the issue was tried by implied consent as provided in TRCP Rule 15.02, and relies upon a finding by the Trial Judge that the issue was tried by consent.

Nothing is found in the judgment to indicate a finding of trial by consent, and plaintiff cites no part of the transcript that would support such a finding.

All contracts in writing signed by the party to be bound are prima facie evidence of consideration. TCA § 47–50–103. The want of consideration may be shown as a defense in an action on a contract between the parties. TCA 47–50–103.

The burden of overcoming the presumption of consideration is upon the party relying upon lack of consideration. *Douglas v. G.M.A.C.*, 205 Tenn. 432, 326 S.W.2d 846 (1959). Plaintiff cites no part of the evidentiary record which satisfies this burden.

Under the circumstances, this Court respectfully disagrees with the finding of the Trial Judge that the option was unenforceable for lack of consideration.

Defendant next challenges the finding of the Trial Judge that the option was unenforceable for lack of adequate description. The descriptions in the option were adequate between the parties who had, until the previous day been the joint owners of the property. *Rogers v. Roop*, 19 Tenn.App. 579, 92 S.W.2d 423 (1935).

Although this Court has heretofore differed with two of the reasons for the dismissal of defendant's counterclaim, there is a third reason why defendant is not entitled to succeed upon his counterclaim, and that is that defendant never properly offered to exercise his option.

An option is an offer to sell, irrevocable for a specified period. *Jones v. Horner*, 36 Tenn.App. 657, 260 S.W.2d 198 (1953). It confers on the optionee the right to purchase within the stipulated time subject to the terms of the option. *Marsh v. Galbraith*, 31 Tenn.App. 482, 216 S.W.2d 968 (1949).

An option cannot be enforced as a contract until exercised by acceptance. The acceptance must be unqualified, absolute, unconditional, unequivocal, unambiguous, positive, without reservation, and according to the terms of the option. An acceptance of an option must be such a compliance with the conditions as to bind both parties, and if it fails to do so it binds neither. 91 C.J.S. Vendor & Purchaser, § 10, pp. 852 et seq. and authorities cited thereunder.

No such exercise by acceptance is shown.

If it be argued that the exercise of the option was waived by the optioner's declaration of repudiation, the true facts are that the apparent disaffirmance was expressed during a heated "hollering match" in which the parties were not acting to create or destroy contractual rights but "sparring for advantage". Because of the special circumstances existing between the parties (estranged spouses, business partners, fellow real estate brokers, with pending business relations such as one party handling rentals of the property of the other) it was necessary for defendant to do more than listen to an angry retort in order to exercise so serious and valuable a right as that to purchase $250,000 worth of property. He should have submitted a timely, written declaration of exercise of the option, tendering performance of its terms and demanding deeds. This he did not do.

Moreover, this Court agrees with the Trial Judge that the true intent of the parties was that defendant would have the option to purchase the *equity* of plaintiff in the properties for $250,000, and not that he would acquire the properties free of encumbrance for this amount. It appears that the custom of the parties in dealing with their property was to consider the equity above encumbrance as being the property. In this view of the option, the plaintiff was correct in demanding the full $250,000 for the equity with defendant assuming existing mortgages.

For the reasons stated, this Court concurs in the decision of the Chancellor to dismiss the counterclaim of defendant.

Plaintiff's brief states:

For her part of this appeal, Ms. Pinney believes she was not allowed her full measure of damages in the Court's denial of $769.50 in repairs incurred because of FHA requirements in securing re-financing (R. p. 168) and in the denial of her attorney's fees. (R. p. 171). With respect to her attorney's fees, Ms. Pinney submits her action was filed as a contempt petition requesting performance by the defendant of an obligation ordered pursuant to a Final Decree of Divorce. (R. p. 12–16). The defendant Tarpley failed to hold Ms. Pinney harmless from payment of this debt and was in contempt of Court. Ms. Pinney prayed for reasonable attorney's fees in her petition. (R. p. 16). The Court apparently reasoned this action could only sound in breach of contract. (R. p. 171). Accordingly, the Court denied attorney's fees which Ms. Pinney feels should be reasonably allowed her for enforcing the terms of the Final Decree incorporating the Property Settlement Agreement. (R. p. 307–308). Ms. Pinney respectfully submits she was entitled to these damages and would ask this Honorable Court to allow the same in this appeal.

This Court agrees with the Chancellor that the repairs in question were reasonable expenses of ownership and not peculiarly a result of defendant's default. There is no occasion for the allowance of attorney's fees as a part of an alimony allowance. *Connors v. Connors*, Tenn.1980, 594 S.W.2d 672. *Ligon v. Ligon*, Tenn.App.1977, 556 S.W.2d 763. Neither is plaintiff entitled to attorney's fees incurred in the present proceeding to enforce the indemnity agreement. Attorney's fees incurred by the indemnitee in efforts to avoid the losses are covered by the indemnity agreement. *Harpeth Valley Utilities Dist. of Davidson and Williamson Counties v. Campbell and Due Contractors*, 225 Tenn. 181, 465 S.W.2d 353 (1971); but this is not such a case. In the absence of an express agreement to pay attorney's fees for enforcement of a contract, such are not recoverable in Tennessee. *Stringfield v. Hirsch*, 94 Tenn. 425, 29 S.W. 609 (1895) *Goings v. Aetna Cas. & Sur. Co.*, Tenn.App.1972, 491 S.W.2d 847; *Thayer v. Wright Co.*, 50 Tenn.App. 515, 362 S.W.2d 805 (1961).

The judgment of the Trial Judge is affirmed. Costs of this appeal are taxed against the defendant-appellant. The cause is remanded to the Trial Court for such further proceedings, if any, as may be necessary and proper.

Affirmed and remanded.

LEWIS and CANTRELL, JJ., concur.