# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
February 3, 2010 Session

## P & N DEVELOPMENT, A PARTNERSHIP, ET AL. v. BETTY B. CHURCH

### Appeal from the Chancery Court for Sullivan County
### No. K0035142-B      John. S. McClellan, III, Chancellor

### No. E2009-01122-COA-R3-CV - FILED AUGUST 4, 2010

Lessee sued Lessor for specific performance and damages, alleging breach of contract after Lessor did not permit Lessee to exercise the option to purchase the property. Lessor moved to dismiss, claiming that Lessee failed to properly and timely exercise the option to purchase the property. Lessor filed a counterclaim, alleging breach of contract and damages. After a bench trial, the trial court held that Lessee properly and timely exercised the option to purchase the property. Lessor appeals. Upon reviewing the record, we conclude Lessee did not exercise the option to purchase the property before the expiration of the Lease. Therefore, we affirm in part, reverse in part, and remand.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
### Affirmed in Part, Reversed in Part; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Timothy W. Hudson, Bristol, Tennessee, for the appellant, Betty B. Church.

Thomas A. Peters, Kingsport, Tennessee, for the appellees, P & N Development, a partnership, Barney Pendleton, and Rhea Newland.

### OPINION

### I.  FACTUAL BACKGROUND

On February 17, 1977, Betty and Gary Church entered into a lease agreement with P & N Development ("the Lease") for a building located at 2437 Memorial Boulevard, Kingsport, Tennessee. Barney Pendleton and Rhea Newland, sole partners of P & N Development ("Lessee"), signed the Lease on behalf of the partnership. Shortly thereafter,

the Churches divorced and Betty Church ("Lessor") was awarded the property.

Beginning April 1, 1977, the Lease provided a primary term of twenty years with two automatic renewal terms of five years each, for a total of thirty years, ending on April 1, 2007. The Lease also provided for an option to purchase the property at the end of the Lease's term. The relevant provision states:

> 8. Lessee shall have the option to purchase said property at the end of this Lease and the additional ten (10) year option, or at the end of a Thirty (30) year period, for the total purchase price of Two Hundred Thousand Dollars ($200,000.00).

The parties agree that the thirty-year period ended on April 1, 2007, and Lessee had until that date to exercise the option to purchase. The Lease does not specify how Lessee should give notice to Lessor of the intent to exercise the option.

During the primary term of the Lease, Lessee assigned its rights under the Lease to Rhea Newland's sons and periodically subleased the property. In January 2007, the sons, Rhea L. Newland and Gregory Newland, assigned the rights under the Lease back to Lessee. At some point, the building on the property fell into disrepair. Lessee demolished the building and constructed a steel post building in its place. By the end of the thirty-year period, the property was not under contract with any third party although Lessee discussed subleasing the property for a produce stand.

In January 2007, Lessor asked Lessee if it intended to exercise the option to purchase. Lessor was considering a tax-deferred exchange for the property if the option was exercised. Lessor followed up the conversation by sending a letter dated January 22, 2007 to Lessee. Lessor never received a response to that letter.

On Thursday, March 29, 2007, Lessee, through counsel, sent a letter to Lessor's post office box, via certified mail, informing Lessor of its intention to exercise the option to purchase the property. Lessor signed for and received the letter on Wednesday, April 4, 2007.

Lessor refused to allow Lessee to exercise the option to purchase after the expiration of the Lease. As a result, Lessee filed a suit against Lessor for specific performance and damages and recorded a notice of a lien lis pendens against the property. In response, Lessor filed a civil warrant against Lessee for breach of contract claiming that Lessee failed to maintain the property and pay property taxes. The cases were consolidated and Lessor's suit was treated as a counterclaim for damages for unpaid property taxes, unpaid insurance, and

loss of rent.

A bench trial was subsequently held. After hearing the evidence, the trial court determined that Lessee properly exercised the option to purchase the property pursuant to the terms of the Lease and dismissed Lessor's counterclaim. Lessor appeals the trial court's judgment in favor of Lessee.

## II. ISSUES PRESENTED

Lessor raises the following issues on appeal:

1. Whether the trial court erred in finding Lessee timely exercised the option to purchase the real estate.

2. Whether the trial court erred in finding that Lessee owned the option to purchase the real estate.

3. Whether the trial court erred in finding in favor of Lessee when no relief was awarded.

4. Whether the trial court erred in denying Lessor's claims for damages.

## III. STANDARD OF REVIEW

The standard of review for a non-jury case is de novo upon the record. *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995). There is a presumption of correctness as to the trial court's factual findings, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). For issues of law, the standard of review is de novo, with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

## IV. DISCUSSION

### A.

The central issue of this appeal is whether the trial court erred in finding that Lessee timely exercised the option to purchase the property.

Acceptance in an option contract, or the exercise of the option, "is not operative until

received by the offeror." Restatement (Second) of Contracts § 63 (1981). Tennessee adopts the majority rule, as enumerated in the Restatement, that notice of intent to exercise an option is only valid upon receipt and not upon dispatch, unless the contract states otherwise. *S. Region Indus. Realty, Inc. v. Chattanooga Warehouse & Cold Storage Co.*, 612 S.W.2d 162, 164-65 (Tenn. Ct. App. 1980) (citing *Am. Oil Co. v. Rasar*, 308 S.W.2d 486, 490 (Tenn. 1957)).

Option contracts limit the offeror's ability to revoke an offer. Restatement (Second) of Contracts § 25 (1981). Option contracts bind the offeror during the life of the contract as the option is irrevocable during that time. *Am. Oil Co.*, 308 S.W.2d at 490. Time is therefore of the essence in option contracts because the offeror is bound until the time of expiration. *Ray v. Thomas*, 232 S.W.2d 32, 34-35 (Tenn. 1950).

In Tennessee, an option is only enforceable as a contract when it is exercised by an unqualified, absolute, unconditional, unambiguous acceptance, without reservation, and in accordance with the terms of the option. *See Pinney v. Tarpley*, 686 S.W.2d 574, 580 (Tenn. Ct. App. 1984). For acceptance to be proper, it must be made within the time specified in the contract. *Id.* at 579-80. The burden is therefore on the offeree to properly accept the option in strict compliance with the requirements of the contract. *Id.* at 580 ; *see also Allen v. Nat'l Adver. Co.*, 798 S.W.2d 766, 771 (Tenn. Ct. App. 1990).

For leases with options that only provide that the option must be exercised at "the end of" or "at the termination of" the lease, the ability to exercise or accept that option expires when the lease expires. *Norton v. McCaskill*, 12 S.W.3d 789, 794 (Tenn. 2000). In *Norton*, the Tennessee Supreme Court explained:

> After considering the two prominent views espoused by the courts confronted with this issue, we conclude that in the absence of a specific time designation in the lease, an option to renew remains effective only during the term of the lease. Accordingly, we agree with those courts concluding that when a lease stipulates that an option to renew must be exercised "at the end of" or "at the termination of" the lease, the lessee must exercise the option on or before the day the original lease term expires.

*Id.* at 793-94.

In the instant case, the option to purchase was binding and irrevocable until the expiration of the Lease on April 1, 2007. The Lease provides that Lessee "shall have the option to purchase" the property "at the end" of the Lease. Therefore, Lessor must have received notice of Lessee's intent to exercise the option to purchase the property on or before

April 1, 2007. While Lessee mailed a letter notifying Lessor of its intent to exercise the option to purchase on March 29, 2007, the letter was not received by Lessor until April 4, 2007, as evidenced by the delivery date on the return receipt.

The burden was on Lessee to ensure that Lessor received notice of the intent to exercise the option to purchase on or before April 1, 2007. *See Pinney*, 686 S.W.2d at 580. While Lessor mailed written notice via certified mail to Lessor's post office box before the expiration of the Lease, Lessee did nothing more to ensure that his notification was received by the deadline.

There are special circumstances wherein equitable relief may be granted in spite of the lessee's failure to properly exercise an option to renew. *See generally Am. Oil Co.*, 308 S.W.2d at 490. In contrast, options to purchase are strictly construed, and courts have not granted relief even where the date of expiration fell on a national holiday and service was effected one day later. *See Silsbe v. Houston Levee Indus. Park, L.L.C.*, 165 S.W.3d 260, 266 (Tenn. Ct. App. 2004).

In the case at bar, the trial court found that equity favored the position of Lessee and cited *Southern Region* as authority. The *Southern Region* case is not instructive in resolving the issues of this case for two key reasons. First, equity is only granted in special circumstances where "the failure to grant relief would cause a tenant unconscionable hardship." *Corim, Inc. v. Sam Blair Co.*, 721 S.W.2d 256, 261 (Tenn. Ct. App. 1986) (citing William B. Johnson, Annotation, Circumstances excusing lessee's failure to give timely notice of exercise of option to renew or extend lease, 27 A.L.R. 266 (1984)). Second, the dispute in *Southern Region* concerned an option to renew a lease, not an option to purchase – the issue in this case.

In *Southern Region*, the lease at issue concerned a warehouse facility that included a cold storage plant. 612 S.W.2d at 163. The lease required the tenant to provide written notice of its election to renew the lease at least 90 days prior to expiration of the lease's primary term. *Id.* The tenant mailed a letter of its intent to renew the lease within 90 days of the lease's expiration, but the landlord never received it, allowed the lease to expire, and filed suit when the tenant refused to vacate the premises. *Id.* Because termination of the lease would result in "extreme economic hardship to the [tenant] or a complete loss of the business operation," this court concluded that equitable relief was appropriate. *Id.* at 165.[1]

---

[1]In *Southern Region*, special circumstances existed due to the severe economic consequences that would result from the termination of the lease. This court found that there were not similar buildings containing cold storage facilities in the Chattanooga, Tennessee area and the cost of constructing a similar

(continued...)

There is no evidence of unconscionable hardship or special circumstances in this case. The record reflects that Lessee was not a tenant of the property at issue. Although Lessee argues that it discussed leasing the property, no conclusive agreement was reached. There is no evidence that the property was under any contract at the time of Lessee's attempt to exercise the option to purchase. The loss of potential rent in this case is distinguishable from the exceptional facts of *Southern Region*, where the tenant would have likely closed its business if forced to move due to the uncommon nature of a cold storage plant and the high cost of building a suitable facility. *See S. Region*, 612 S.W.2d at 165.

The trial court also relied on *Southern Region* to support its finding that "there is a presumption of the due receipt of a letter that arises upon proof that such letter was deposited in a P.O. Box or post office properly stamped and correctly addressed." The trial court's reliance on *Southern Region* for such a proposition is misplaced.

Although the *Southern Region* court concluded that equitable considerations relieved strict compliance with the lease's proscribed method to exercise the option, it nonetheless observed the applicable rules governing option contracts. 612 S.W.2d at 165. This court explained:

> A presumption of the due receipt of a letter arises upon proof that such letter was deposited in the post office, properly stamped and correctly addressed. And a presumption that a letter was mailed may arise from the testimony of an officer of a corporation that he dictated and signed the letter and place it in the regular course of mailing. . . . **The rule that notice is operative on mailing does not extend to option contracts.**

*Id.* at 164 (emphasis added) (supporting citations omitted).[2]

In support of its finding, the trial court noted that it was only Lessor's personal circumstances – an automobile accident – that prohibited her from checking the post office

---

[1](...continued)
cold storage facility would cost in excess of six million dollars. 612 S.W.2d at 165.

[2]In *Southern Region*, this court further noted:

> But when, by the terms of an already consummated contract it is provided that one party shall have power to produce certain legal results by giving notice, it is usually held that this means notice received in fact and not merely notice mailed.

*See* 612 S.W.2d at 164; *see also Calvert Ins. Co. v. Amer. Nat. Bank*, 438 S.W.2d 545 (Tenn. 1969)).

box until after the expiration of the Lease. However, barring any evidence of bad faith, the date on which Lessor checked her post office box is of no consequence because, given the exceptional nature of option contracts, the burden of ensuring receipt of acceptance is on the offeree, not on the offeror. *See Pinney*, 686 S.W.2d at 579-80.

Lessee – the offeree – had the burden of ensuring that Lessor – the offeror – received its acceptance of the option to purchase on or before the expiration of the Lease's primary term. Besides mailing the letter of its acceptance of the option a few days before the expiration of the Lease, Lessee made no efforts to personally serve Lessor or notify her by phone. Thus, we conclude that Lessee failed to timely exercise the option to purchase before the Lease expired on April 1, 2007. Accordingly, we reverse.

B.

We next address whether the trial court erred in finding that Lessee owned the option to purchase the property. Lessee assigned its rights under the Lease to Rhea Newland's sons, Rhea L. Newland and Gregory Newland in 1982. On January 25, 2007, the sons assigned those rights back to Lessee. Although Lessee is listed as the party of the second part and the sons are listed as parties of the first part, there is no language in the assignment stating to whom the rights are assigned. Lessor, citing *Collier v. Greenbriar Developers, L.L.C*, No. E2008-01601-COA-R3-CV, 2009 WL 1026025 (Tenn. Ct. App. E.S., April 16, 2009), argues that the option to purchase the property was never properly re-assigned to Lessee because the 2007 assignment fails to contain language identifying the assignee. We disagree.

For an assignment to be effective, "the owner of [the] right must manifest an intention to make a present transfer of the right." *Collier*, 2009 WL 1026025, at *5. However, "the owner **may** manifest this intention directly to the assignee," but is not required to do so. *Id.* (emphasis added). Further, "no words of art are required; the assignor need not even use the word assign. Whether the owner of a right has manifested an intention to transfer it is a question of interpretation to be answered from all circumstances, including words and other conduct." *Id.*

In the instant case, considering the history of the Lease's assignment, that Lessee and the sons are named in the 2007 document, and given Lessee's testimony that this was its intention, the intent to assign the rights to the property back to Lessee is sufficient to render the assignment effective. Accordingly, we affirm the trial court's ruling on this issue.

C.

We consolidate our discussion of the remaining issues raised by Lessor. Lessor

contends that the trial court erred in failing to award any type of relief and in dismissing her claim for damages.

From our review of the final order, it appears that the trial court dismissed Lessor's claims for damages because of its finding that Lessee properly exercised the option to purchase the property. The trial court also stated that Lessee "would owe their obligation under the lease agreement." Aside from that, the trial court failed to enter an amount for Lessee's remaining obligation.

In light of our conclusion that Lessee failed to timely exercise the option to purchase, a remand to the trial court is necessary for a determination on Lessor's counterclaim for damages concerning the property taxes, insurance, and unpaid rent. On remand, the trial court should determine what, if any, damages are appropriate for Lessor's counterclaim.

## V. CONCLUSION

For the foregoing reasons, we affirm in part and reverse in part the judgment of the trial court. Because Lessor did not receive Lessee's acceptance of the option until after the expiration of the Lease, we reverse and find that Lessee failed to timely exercise the option to purchase. We affirm the trial court's finding that the rights under the Lease were properly assigned back to Lessee in 2007. Accordingly, we remand for further proceedings consistent with this Opinion and the collection of costs. Costs of this appeal are taxed to the appellees, P & N Development, Barney Pendleton, and Rhea Newland.

_____
JOHN W. McCLARTY, JUDGE