**CORIM, INC., Plaintiff/Appellee,**

v.

**SAM BLAIR COMPANY, INC., d/b/a Blair Management Services, Defendants/Appellants.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Aug. 1, 1986.

Permission to Appeal Denied by Supreme Court Nov. 24, 1986.

Michael G. McLaren and George W. Jenkins III, Memphis, Thomason, Hendrix, Harvey, Johnson, Mitchell, Blanchard & Adams for plaintiff/appellee.

Thomas B. Avery and Valerie Futris, Memphis, for defendants/appellants.

BROOKS McLEMORE, Chancellor (Retired), Special Judge.

This is a forcible entry and detainer action originally tried in the General Sessions Court where judgment was entered for plaintiff. The case was appealed to the Circuit Court and tried de novo by the Circuit Judge without the intervention of a jury.

The issues involved are (1) whether a lease was renewed or extended by proper notice, (2) whether strict notice was waived by the actions of the plaintiff-lessor, (3) with respect to notice, whether conduct of plaintiff-lessor constituted ratification, (4) whether plaintiff-lessor is estopped to deny agency of defendant-lessee to accept notice, or (5) whether defendant-lessee is excused from strict compliance of notice requirements because of special circumstances.

The trial judge found against the defendant-lessee on all issues and awarded possession to plaintiff-lessor.

We affirm.

Appellant will be referred to as Blair, Inc. or defendant-lessee. The appellee will be referred to as Corim, Inc. or plaintiff-lessor.

In 1973, Sam B. Blair built the commercial office building, a portion of which is involved in this litigation. Blair leased 93% of the office space to Federal Express Corporation and used the remaining 1215 square feet to house his real estate brokerage firm, Sam Blair Company, Inc., hereafter called Blair, Inc. Blair, Inc. thus became a tenant of Sam Blair under a lease which expired May 14, 1982. The pertinent provision of this lease stated: "Lessee has the options to renew this lease for two (2) additional five (5) year periods provided Lessee advises Lessor in writing six (6) months prior to the expiration of the original term ... All terms and conditions will remain the same during the renewal periods." Thus the first renewal notice was required to be given on or before November 14, 1981.

In 1980, Blair sold the building subject to the existing lease. Although the owner-

ship of this building has subsequently changed several times, Corim, Inc. has always been, and continues to be, in charge of the management of the building.

Independent of the lease, Corim, Inc. and Blair, Inc. entered into a separate Management Contract whereby Blair, Inc. would manage the building. However, under the separate contract, any negotiations for leases and renewals would be conducted or controlled by Blair, Inc. who was required to consult with the owner and obtain the owner's approval. The owner had delegated this duty to Corim, Inc. Each month Blair, Inc. collected rents and sent them to Corim, Inc. after first deducting five percent as its total fee.

Mr. Ben H. Willingham, Jr., president of Corim, Inc., testified that for some time before November 14, 1981, he was aware of the approaching deadline for Blair, Inc. to renew the lease and was anxious to see what Blair, Inc. would do as he was hoping that Blair, Inc. would fail to give the notice to exercise the option since this would be advantageous to Corim, Inc. because of the amount of rent provided in the original lease.

Mr. Sam Blair testified that he too was aware of the deadline and that he had discussed this matter with his secretary of a number of years, Toni Denning. Mr. Blair testified that on November 4, 1982, he dictated a letter to Mrs. Denning, addressed to the Blair Management Service, and signed it in his capacity as president of the defendant-lessee, giving written notice of his intention to renew said lease. Further, Mr. Blair testified that he requested his secretary to send a copy of the notice to Corim, Inc.

Mrs. Denning testified that she did not send the notice that day. She testified that she was sending other material to Corim, Inc. so she waited until the next day and then sent a copy of the renewal letter with some other material. The November 5 cover letter contains no evidence on its face that the letter of renewal was being sent to Corim, Inc., together with material identified in the letter, nor does the November 4

renewal letter from Sam Blair Company, Inc. addressed to Blair Management Services, indicate that a copy was sent to Corim, Inc.

Jack Wardlaw, administrative officer of Corim, Inc. in Savannah, Georgia, testified that he received and reviewed all incoming mail and did receive the monthly reports and checks mentioned and included in the November 5 letter from Blair, Inc.'s office, and that the renewal letter of November 4 was not in that packet of materials. He further testified that he too was aware that the deadline was approaching and when no notice was received he and Willingham "just let it go at that, because he felt that Sam wasn't going to renew his lease."

In early February 1982, Mr. Ben Willingham, Jr. testified that while engaged in a telephone conversation with Sam Blair concerning the Federal Express lease, he mentioned that notice of renewal had never been received, to which Mr. Blair replied, "that doesn't matter, does it?" Mr. Willingham's response was "We'll see." On February 7, 1982, Corim, Inc. received a letter from Blair, Inc. with which a copy of the November 4, 1981 notice of renewal was enclosed and the letter stated that another copy had previously been sent to Corim, Inc. on November 5, 1981.

Until May 12, 1982 neither party addressed the other regarding this matter. On May 12, 1982, Blair, Inc. received notice from Corim, Inc. that its continued tenancy on the premises would be regarded as a tenancy at will.

The trial court held that the burden of proving the notice was properly given was on the lessee, Blair, Inc., and noted that the proof was in considerable conflict as to whether the envelope mailed on November 5, 1981, actually contained the November 4th notice of renewal. The trial court found that Blair, Inc. had failed to prove by preponderance of the credible evidence that the defendant included a copy of the notice in the envelope mailed on his behalf on November 5, 1981. The court noted that any presumption in law that a mailed notice to Corim, Inc. was received was inapplica-

ble to the case as there was a failure of proof to show that the notice was actually sent.

This case having been tried by the court without the intervention of a jury, our review on appeal is *de novo* upon the record in the trial court, and all findings of fact in the court below come to us with a presumption of correctness. Absent an error of law, unless the evidence preponderates against these findings, we must affirm. Rule 13(d), *Tennessee Rules Appellate Procedure.* The findings of the trial court as to the credibility of witnesses should be accorded great weight.

■ The evidence does not preponderate against the finding of the trial court on the foregoing issue and there is no real evidence that compels a contrary conclusion as to this finding of fact by the trial court.

Blair, Inc. contends that Blair Management was agent of Corim, Inc. and that on November 4, 1981, when Blair, acting as President of Blair, Inc., dictated the notice of exercise of the option, and signed same and then placed the notice in the appropriate Blair Management Services file, that this constituted the delivery of notice required by the terms of the lease, i.e., he may give himself binding notice as the agent of Corim, Inc.

■ The trial court found Blair, Inc.'s interest as a tenant was antagonistic to his interest as an agent of Corim, Inc. in that if the lease was not renewed Corim, Inc. could re-let the premises with a 30% increase in rent, while if renewed, Blair, Inc. would continue to operate in the building for a cost lower than the then existing market and therefore rejected this contention relying upon the case of *Federal Kemper Insurance Company v. Preston,* 520 F.Supp. 24 (E.D.Tenn.1981). We agree with the finding of fact and the conclusion of law reached by the trial court.

Ordinarily notice to the agent is notice to the principal, however, this is not so where the agent's interest is adverse to the principal. In *Heard v. Miles,* 32 Tenn.App. 410, 420, 222 S.W.2d 848, this Court in discussing an agent's duty not to act as adverse party stated:

Perhaps as clear and succinct a statement of the basic general law on the subject as can be found anywhere was written by Chancellor Cooper in Tynes v. Grimstead, 1 Tenn. Ch. 508, at page 510, as follows: "No principle is better settled, or founded upon a sounder basis of positive law or legal ethics, than that which declares that whoever undertakes to act for another, in any matter, shall not, in the same matter act for himself, and this without respect to the fact whether the party has or has not made a profit by the act. Equity disallows the measure upon general principles, without reference to advantages or unfairness."

In the same case the Court adopted the statement from Pomeroy's Equity Jurisprudence that:

In any contract of purchase or sale with the principal, or other transaction by which the agent obtains a benefit, *a presumption arises against its validity which the agent must overcome.* (Emphasis by the Court.)

We agree with the trial court that these statements of law are controlling and there is no merit to defendant's contention.

■ Blair, Inc. insists that Corim's conduct following the conversation with Mr. Willingham in February in not affirmatively repudiating the late notice constitutes a ratification. In support of this contention many authorities are cited involving ratification of acts of agents involving liability of the principal to third parties. It cannot be doubted that a principal who is made aware of an unauthorized act on his behalf by an agent must disavow the act promptly to third parties who may rely upon the agent's act or he will be bound thereby. Sometimes very little evidence has been required to show ratification where third parties are involved. No third parties are involved in this case. The only parties are Corim, Inc. and Blair, Inc.

■ The burden of proof to show ratification is on the lessee. There is no direct

proof as to ratification and we are of the opinion under the facts stated that no inference of ratification or waiver is warranted. Certainly the trial court was justified in finding that under the proof that there was no intention on the part of the lessor at any time to accept the renewal or extension of the lease.

Plaintiff-lessee insists that Corim, Inc. "is estopped to deny agency and its right to accept notice of renewal on behalf of owner-lessor." We have heretofore pointed out that whoever undertakes to act for another, in any matter, shall not, in the same matter act for himself. Under the facts of this case we know of no theory of estoppel that would alter that rule of law.

■ To create an estoppel the activities complained of must lead the complainant into a line of conduct which must be prejudicial to him. In *Arthur v. Lake Tansi Village, Inc.*, 590 S.W.2d 923, 930 (Tenn. 1979), our Supreme Court said:

Estoppel *in pais* has been defined in this state as:

"Estoppel in pais is an estoppel that does not arise from a record or written instrument, but arises from the conduct or silence of a party and is sometimes referred to as equitable estoppel. In the true sense, all matters of estoppel arise in equity, for the purpose of the existence of the doctrine is to prevent inconsistency and fraud resulting in an injustice. When a man has been misled by the untruth propounded by another, *and acted to his detriment in reliance upon the misrepresentation*, the misleading party will be estopped to show that the true facts are contrary to those he first propounded." *Duke v. Hopper*, 486 S.W.2d 744, 748 (Tenn.App.1972). [Emphasis supplied.]

■ Defendant-lessee proved no conduct which he undertook in reliance on Corim's failure to repudiate his self-cured default. An essential element of estoppel, action by one party in reliance upon a mis-statement or silence by another to his detriment, is not present. Indeed, the proof shows that even if he moves there would be no injury, as there is space available nearby which is "commensurate" with Corim's.

■ Defendant-lessee contends that Corim's failure to inform defendant-lessee that it would not accept late notice given in early February until two days prior to the expiration of the original term of the lease on May 14, 1982 constituted a waiver of timely notice to extend the lease. We find no merit to this contention as there was no duty to speak placed upon Corim, Inc. under the facts of this case. At least, there is no greater duty on Corim, Inc. to speak than is on the defendant-lessee. The lease required defendant-lessee to give timely notice if he wanted an extension. The mechanics of giving such a notice are simple, however, the failure to give the notice can result in grave consequences. The evidence shows that not once did the defendant-lessee inquire as to whether the notice that he contended had been mailed had been received by Corim, Inc. We agree with the trial court that when faced with a task as important as this one was to defendant-lessee one would not reasonably act so casual.

We are not unmindful that a landlord may waive his right to terminate where the lessee continues to make regular payments and the landlord fails to protest that the notice came too late, but, that is not the issue presented in the case at bar. Here the lease did not expire until May 14 and any rent being paid was pursuant to the original lease.

■ We likewise agree with the trial court that there are no special circumstances warranting equitable relief. The trial court, in an excellent memorandum opinion, in discussing the issue said:

The avenue in which the defendant-lessee is seeking to obtain relief is an existing one in Tennessee. In *American Oil Company v. Rasar*, 308 S.W.2d 486 (Tenn.1957) the Supreme Court for the State of Tennessee set out the general rule as follows:

'It is quite generally recognized that where a lessee has a right of renewal

provided he gives the lessor notice by a specified time that he intends to exercise such privilege, the giving of the notice is a condition precedent which must be complied with within the stipulated time, and that in the absence of special circumstances warranting a court of equity in granting relief the right of renewal is lost if the notice is not given in accordance with the provisions of the lease. 44 Am.Law.Rep., 2d Series, p. 1362.'

308 S.W.2d at 490. Applying this rule to the case at hand, in order for this Court to grant the defendant-lessee the equitable relief it seeks we must determine that "special circumstances" exist. Whether "special circumstances" exist will depend on the facts of each case; however, it is generally recognized that equity will intervene only if: (1) the tenant's delay in renewing was slight; (2) the delay did not prejudice the landlord, and (3) the failure to grant relief would cause a tenant unconscionable hardship. 27 A.L.R. 4th 266, 271. In attempting to determine the degree of hardship occasioned by the tenant the court should weigh such factors as the tenant's initial investment, improvement on the premises made by the tenant, goodwill at the particular location, the potential loss of existing business from the termination of the lease, and the cost of being required to move to a new location.

Upon a review of the facts of this case, this Court is unable to find such "special circumstances" as to entitle defendant-lessee to be relieved from the burden of late notice. In other words, we find no special hardships inflicted upon this defendant-lessee other than those which normally accompany a termination of a lease. Involved in this case was a relatively small amount of office space. It does not appear that these offices contained any unique feature which set them apart from the other office buildings available in the area, nor does it appear that the offices possessed a quality that made them of special value to defendant-lessee. The record is silent as to any major improvements placed on these premises by defendant-lessee. There has been no evidence offered tending to demonstrate that a termination of the lease would result in a loss of business. In short, a reason has not been shown why the defendant-lessee could not move into other nearby offices, or even renegotiate the lease with the plaintiff-lessor at a rental value equitable to both.

.  .  .  .  .

The most recent case concerning this theory of recovery is *Southern Regional [Region] Industrial Realty Co., Inc. v. Chattanooga Warehouse & Cole [Cold] Storage Co., Inc.*, 612 S.W.2d 162 (Tenn. App.E.S.1980) which involved a ninety day notice requirement. In that case, the tenant was leasing a warehouse facility with a cold storage plant and had been doing so since 1963. The lease contained an option to renew which could be exercised by ninety days written notice. There was evidence that the tenant attempted to exercise said option by mailing written notice to the lessor, but the letter was never received. Fifty-eight (58) days before the lease terminated the lessor learned of the lessee's intention to renew, but claimed the lessee lost all such right because of a failure to give the required notice timely. The court held in favor of the lessee because of the tremendous hardship said lessee would suffer by requiring him to vacate the premises. The warehouse being leased was the only such facility in Chattanooga at which the lessee could operate his business. To have required the lessee to vacate would probably have resulted in the lessee being put out of business. Additionally, the cost of building such a facility was estimated to be around $6,000,000.00. Noting that no prejudice would be suffered by the lessor if the lessee was allowed to remain, the court relieved the lessee from the terms of the lease.

In the case at hand, the hardship which would fall on Mr. Blair is not near the

degree which would have fallen on the tenant in the *Southern Regional [Region] Industrial Realty* case. In fact, the record is void of proof of any hardship the defendant-lessee would be required to sustain other than those which normally accompany a termination of a lease. There does not appear to be anything "special" on the legal sense of the word about the circumstances of his case ...

We adopt the foregoing rationale and conclusions of law of the trial court as to the issue discussed.

Having determined all issues against the appellant, we affirm the judgment of the trial court in all respects. The case will be remanded to the Circuit Court of Shelby County for such other action as may be appropriate not inconsistent with this opinion.

The costs are adjudged against the appellant for which let execution issue, if necessary.

TOMLIN, P.J., and HIGHERS, J., concur.