# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

ROCK ABOU-SAKHER,           )
           )
    Plaintiff/Appellant,     )
           )    Humphreys Chancery
           )    No. 22-381
VS.              )
           )    Appeal No.
           )    01A01-9604-CH-00185
HUMPHREYS COUNTY, TENNESSEE  )
and HUMPHREYS COUNTY AIRPORT  )
AUTHORITY,           )
           )
    Defendants/Appellees.   )

FILED

March 27, 1997

Cecil W. Crowson
Appellate Court Clerk

APPEAL FROM THE CHANCERY COURT FOR HUMPHREYS COUNTY
AT WAVERLY, TENNESSEE

THE HONORABLE LEONARD W. MARTIN, JUDGE

For the Plaintiff/Appellant:

Calvin P. Turner
Lebanon, Tennessee

For the Defendants/Appellees:

John Lee Williams
Waverly, Tennessee

## AFFIRMED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal involves a dispute between Humphreys County and the former fixed-base operator of the Humphreys County Airport. After the county declined to renew the fixed-base operator's lease and hired a full-time airport manager, the former fixed-base operator filed suit in the Chancery Court for Humphreys County seeking a declaration that his lease remained in effect and challenging his termination as part-time airport manager. The trial court heard the case without a jury and found that the fixed-base operator's lease had expired and that the plaintiff was not entitled to reinstatement as part-time airport manager. We affirm the judgment.

## I.

On March 1, 1987, Rock Abou-Sakher and Humphreys County entered into a fixed-base operator's lease agreement whereby Mr. Abou-Sakher became the fixed-base operator[1] at the Humphreys County Airport. The agreement also provided that Mr. Abou-Sakher would be "designated personally as the Airport Manager." The initial term of the lease was five years, and the lease permitted Mr. Abou-Sakher to renew the lease for one additional five-year period. The lease also required Mr. Abou-Sakher to pay $1.00 per year as rent, but both Mr. Abou-Sakher and the county ignored this provision.

Some time later, the county began paying Mr. Abou-Sakher as a part-time county employee. As time passed, Mr. Abou-Sakher pressed the county for a full-time job because he desired to qualify for the county's group health insurance plan. The county never acceded to Mr. Abou-Sakher's request for full-time employment, and neither the county nor Mr. Abou-Sakher formally renewed the

---

[1]A fixed-base operator fuels, services, and hangars airplanes in much the same way that a service station provides similar services for automobiles. *American Eagle Ins. Co. v. Thompson,* 85 F.3d 327, 328 (8th Cir. 1996); *City of Pompano Beach v. F.A.A.,* 774 F.2d 1529, 1533 n.5 (11th Cir. 1985).

fixed-base operator's lease when it expired in March 1992. Nonetheless, Mr. Abou-Sakher continued to function as the airport's fixed-base operator.

In December 1992, the county created an airport authority to oversee the airport, and Mr. Abou-Sakher became the authority's first secretary. In mid-1994, the airport authority obtained funds to hire a full-time airport manager and advertised for the position. Mr. Abou-Sakher and others applied for the job. During the selection process, Travis Jenkins replaced Mr. Abou-Sakher as the airport authority's secretary following a public altercation between Mr. Abou-Sakher and the airport authority's chairman. The airport authority interviewed Mr.Abou-Sakher and the other candidates and in August 1994 hired Mr. Jenkins as the airport's first full-time mananger.

On September 1, 1994, the chairman of the airport authority informed Mr. Abou-Sakher by mail and telephone call that he was no longer the manager of the Humphreys County airport and that he would be required to negotiate another fixed-base operator's lease with Mr. Jenkins because the old lease had expired. The chairman also informed Mr. Abou-Sakher that the authority reserved the right to review and approve any new fixed-base operator's lease.

On November 15, 1994, Mr. Abou-Sakher sued the county and the airport authority in the Chancery Court for Humphreys County seeking a declaration of his rights under the 1987 fixed-base operator's lease agreement and his status as a county employee. On the same day, the county filed an unlawful detainer action in the Humphreys County General Sessions Court seeking to recover the airport property still in Mr. Abou-Sakher's possession. The circuit court consolidated both cases after Mr. Abou-Sakher appealed the adverse general sessions judgment to the circuit court.

Following a bench trial in October 1995, the trial court determined that the 1987 fixed-base operator's lease agreement expired in March 1992 and that Mr. Abou-Sakher had been a holdover tenant thereafter. The trial court also determined that the county's selection of a full-time airport manager violated the Sunshine Law but that Mr. Abou-Sakher did not have a contract right under the

fixed-base operator's lease agreement to be employed as the airport manager. Mr. Abou-Sakher has appealed from this judgment.

## II.
### RENEWAL OF THE LEASE AGREEMENT

Mr. Abou-Sakher asserts that the 1987 fixed-base operator's lease is still in effect either because he exercised the renewal option or because the County waived its right to require strict compliance with the lease's renewal provisions. We have determined that Mr. Abou-Sakher did not effectively renew the 1987 fixed-base operator's lease and that the county did not waive its right to require Mr. Abou-Sakher to comply with the lease's renewal provisions.

### A.

The 1987 fixed-base operator's lease agreement contained the following renewal provision:

> 2.) The Lessee shall have the option to renew the lease for an additional period of five (5) years on the same terms and conditions herein expressed by giving notice to the Lessor in writing of the Lessee's election to extend this lease with the same to be given no later than sixty (60) days before the expiration of the original five (5) year period.

Mr. Abou-Sakher asserts that he provided the county with written notice consistent with this provision in three letters between March 30, 1989 and July 29, 1991.

Mr. Abou-Sakher's March 30, 1989 letter related to the reclassification of his part-time position to a full-time position. He stated:

> This is to confirm that I'm not requesting any increase in salary or any change to my existing or next contract with the county. My main interest in this move is to get on the county health plan.

He closed his letter by stating: "Looking Forward To Serving The Airport and The County For Many More Years To Come." In the same vein, Mr. Abou-Sakher's April 11, 1991 letter stated:

-4-

> Please be informed that I'm interested in renewing my contract with the county fot [sic] next five year period. However as we have discussed I would like for you to help put me on the county health plan, knowing that will not change this or the next contract period terms or conditions.

Finally, Mr. Abou-Sakher wrote in his July 29, 1991 letter:

> Even though my contract with the county as fixed base operator is [sic] still have some time to go, I would like to list [sic] your help and support to change my status with the county as a part time airport manager to a full time, with the next contract period.

## B.

### THE EXERCISE OF THE RENEWAL OPTION

Renewal options such as the one involved in this case are essentially unilateral contracts giving the lessee an irrevocable right extend a lease during the option period. *American Oil Co. v. Rasar,* 203 Tenn. 37, 45, 308 S.W.2d 486, 490 (1957). Lessees must give timely notice according to the terms of the option, and lessees who fail to give the required notice lose their right to renew the lease. *American Oil Co. v. Rasar,* 203 Tenn. at 45, 308 S.W.2d at 490; *Corim, Inc. v. Sam Blair Co.,* 721 S.W.2d 256, 260-61 (Tenn. Ct. App. 1986); *Southern Region Indus. Realty, Inc. v. Chattanooga Warehouse & Cold Storage Co.,* 612 S.W.2d 162, 164-65 (Tenn. Ct. App. 1980).

Mr. Abou-Sakher's three letters do not satisfy the requirement in the fixed-base operator's lease that he provide the county with written notice of his exercise of his right to renew the lease for an additional five years. While these letters make vague and general reference to Mr. Abou-Sakher's interest in renewing the lease, they focus primarily on his desire to become a full-time county employee in order to obtain health insurance. In order for a notice to be effective in this context, it must state clearly that the lessee is exercising his or her renewal option. Expressions of a lessee's "interest" in renewing a lease amount to little more than an indication that the lessee is still considering whether or not to exercise the renewal option. Accordingly, the trial court correctly held that Mr. Abou-Sakher

did not effectively exercise his option to renew the 1987 fixed-base operator's lease.

## C.

### WAIVER OF RENEWAL REQUIREMENTS

Waiver on the part of the lessor is one of the special circumstances that will excuse a lessee's failure to comply strictly with the terms of a renewal option. *American Oil Co. v. Rasar,* 203 Tenn. at 48, 308 S.W.2d at 191; *Playmate Club, Inc. v. Country Clubs, Inc.,* 62 Tenn. App. 383, 390-91, 462 S.W.2d 890, 894 (1970). In this context,

> [w]aiver is a voluntary relinquishment or renunciation of some right, a foregoing or giving up of some benefit or advantage, which, but for such waiver, he could have enjoyed. It may be proved by express declaration; or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or by a course of acts and conduct, or by so neglecting and failing to act, as to induce a belief that it was his intention and purpose to waive.

*Griswold v. Income Properties, II,* 880 S.W.2d 672, 680 (Tenn. Ct. App. 1993) (quoting *Baird v. Fidelity-Phenix Fire Ins. Co.,* 178 Tenn. 653, 665, 162 S.W.2d 384, 389 (1942)).

We find no evidence in this record that either the county or the airport authority expressly waived its right to insist that Mr. Abou-Sakher exercise his renewal option in accordance with the terms of the fixed-base operator's lease. Similarly, Mr. Abou-Sakher has not pointed to any acts or declarations by the representatives of the county or the airport authority that could be reasonably construed as manifesting an intention and purpose to ignore the renewal provisions of the lease. To the contrary, the minutes of the airport authority's May 18, 1993 minutes reflect that all the parties knew and understood that "[t]he Fixed Base Operator contract has been out since March 1992." Mr. Abou-Sakher is in no position to assert that he was unaware of this fact because he was the secretary who took these minutes. Accordingly, the evidence supports the trial

court's determination that all parties understood that Mr. Abou-Sakher was a holdover tenant after the 1987 fixed-base operator's lease expired in March 1992.

### III.
### MR. ABOU-SAKHER'S EMPLOYMENT STATUS

Mr. Abou-Sakher also insists that he is entitled to be reinstated as part-time airport manager on two grounds. First, he asserts that he has a contract to serve as airport manager as long as his fixed-base operator's lease remains in effect. Second, he asserts that he is entitled to continue as part-time airport manager until the county properly hires a full-time manager. We have already determined that Mr. Abou-Sakher's fixed-base operator's lease has expired. We hold now that Mr. Abou-Sakher did not have a right to continue as part-time airport manager until the county selected and retained a full-time airport manager.

### A.

Mr. Abou-Sakher obtained his title as "airport manager" from the fixed-base operator's lease agreement. According to the lease, Mr. Abou-Sakher was to serve as the airport manager during the term of the lease without receiving any compensation other than the income he derived from being the airport's fixed-base operatory. The circumstances surrounding Mr. Abou-Sakher's later employment as a part-time county employee and the terms and conditions of his employment do not appear in this record.

The airport authority interviewed Mr. Abou-Sakher and the other candidates for the full-time airport manager's job on August 4, 1994. Thereafter, the authority published notice that it would meet in the office of one its members on August 18, 1994 at 4:00 p.m. to select the new airport manager. Contrary to the notice, the airport authority met at 4:30 p.m. in the courthouse annex. At this meeting, the airport authority selected Mr. Jenkins as the new full-time airport manager and determined that it would no longer need a part-time airport manager. Thereafter, on September 1, 1994, the chairman of the airport authority informed Mr. Abou-Sakher that his services as part-time airport manager were no longer

required and that he would be required to renegotiate the fixed-base operator's lease.

## B.

Decisions by governmental bodies made in meetings that violate the Sunshine Law are invalid. Tenn. Code Ann. § 8-44-105 (1993). Accordingly, the airport authority's decision to hire Mr. Jenkins was invalid because the authority did not give adequate public notice of the correct time and place of its meeting as required by Tenn. Code Ann. § 8-44-103(a) (1993). Setting aside the decision to hire Mr. Jenkins, however, provides no solace to Mr. Abou-Sakher unless he can demonstrate some entitlement to his part-time job or some condition of employment that he could remain in his job until his successor was properly appointed. Mr. Abou-Sakher has provided no such proof.

In the absence of proof concerning the terms and conditions of Mr. Abou-Sakher's employment as part-time airport manager, we must presume that he was an at-will employee of the county. At-will employees may be discharged without breach of contract at any time for good cause, bad cause, or no cause at all. *Forrester v. Stockstill*, 869 S.W.2d 328, 330 (Tenn. 1994); *Bennett v. Steiner-Liff Iron and Metal Co.*, 826 S.W.2d 119, 121 (Tenn. 1992). Thus, without an employment contract, a discharged employee cannot recover damages for breach of contract from his or her employer because the employee has no contract right to continued employment. *Forrester v. Stockstill*, 869 S.W.2d at 330.

As an at-will employee, Mr. Abou-Sakher did not have a legally recognized expectation of continued employment with the county. Mr. Abou-Sakher has not asserted that the chairman of the airport authority violated the Sunshine Law or applicable statutes, ordinances, or rules involving county employment when he discharged Mr. Abou-Sakher as airport manager. The record provides no support for this contention had it been made. Accordingly, the trial court correctly determined that Mr. Abou-Sakher failed to prove that he had a legally recognizable right to continued employment as the airport's part-time manager.

## IV.

We affirm the judgment and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to Rock Abou-Sakher and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE


CONCUR:


_____
SAMUEL L. LEWIS, JUDGE


_____
BEN H. CANTRELL, JUDGE