IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 28, 2017 Session

## HOMER L. JONES v. VCPHCS I, LLC

**Appeal from the Chancery Court for Shelby County**
**No. CH-16-0248-2   Jim Kyle, Chancellor**

_____

### No. W2016-02142-COA-R3-CV

_____

Following the end of the three-year term of a commercial real estate lease, the tenant continued to occupy the leased premises and pay rent to the landlord.  The landlord accepted the rent payments for six months and then notified the tenant that the amount of the required rent had increased.  The tenant paid the increased rent but notified the landlord that it was ending its tenancy in thirty days.  Contending that the tenant had in effect exercised its option to renew the lease for an additional three years, the landlord demanded that the tenant pay rent for the remainder of the renewal term.  The tenant refused, and the landlord brought this action for breach of the lease agreement.  Both parties filed motions for summary judgment.  Because the trial court found that the lease had not been renewed and the tenant properly terminated the resulting periodic tenancy upon thirty days' notice, the court denied the landlord's motion and awarded summary judgment to the tenant.  We agree that the lease was not renewed, but because we conclude that the resulting periodic tenancy was year-to-year, the tenant was required to give at least six months' notice prior to the end of the periodic tenancy.  Thus, we affirm in part and reverse in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Reversed in Part; and Case Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

Carroll C. Johnson III, Memphis, Tennessee, for the appellant, Homer L. Jones.

Michael Katzman, Memphis, Tennessee, for the appellee, VCPHCS I, LLC.

**OPINION**

**I.**

A.

The facts are largely undisputed.[1]  On July 21, 2011, Homer Jones leased office space in Memphis, Tennessee, to VCPHCS I, LLC, a limited liability company doing business as Behavioral Health Group.  The lease provided for an initial three-year term at a monthly rent of $3,608.  The lease also provided for two three-year options, each at an increased monthly rent.  To exercise the option, Behavioral Health Group was required to notify Mr. Jones in writing ninety days prior to the end of the relevant term and pay the rent specified in the lease for that option period.

Behavioral Health Group did not exercise its renewal option.  But, when the original lease term expired on July 31, 2014, Behavioral Health Group did not surrender possession.  Instead it continued to occupy the leased premises and pay monthly rent of $3,608.

Mr. Jones accepted the rent payments for the remaining five months of 2014 and the first month of 2015.  Then, in January 2015, Mr. Jones notified Behavioral Health Group that, to continue to occupy the premises, it must pay an increased monthly rent of $3,811.  The $3,811 figure corresponded with the rent that would have been due under the second option period of the lease.  Mr. Jones also demanded payment of $1,218, representing the difference between the rent Behavioral Health Group paid for the first six months after expiration of the original lease term and the rent increase sought by Mr. Jones.  As requested, Behavioral Health Group paid the $1,218 and, beginning in February 2015, the increased monthly rental amount.

On October 30, 2015, Behavioral Health Group notified Mr. Jones that it was terminating the lease effective November 30, 2015.  Behavioral Health Group vacated the premises on November 30 and made no additional rent payments.  Mr. Jones refused to accept the surrender of the leased premises and demanded that Behavioral Health Group continue to pay rent through July 31, 2017.

B.

On February 17, 2016, Mr. Jones filed suit for breach of the lease agreement in the Chancery Court for Shelby County, Tennessee.  Mr. Jones sought a judgment for unpaid

---

[1] Except as otherwise indicated, the facts are taken from the parties' statements of undisputed material facts.  *See* Tenn. R. Civ. P. 56.03.

rent and property damages. Behavioral Health Group filed a counterclaim, alleging that it had overpaid rent after the expiration of the original lease term.

Mr. Jones moved for partial summary judgment. Mr. Jones contended that, under the undisputed facts, Behavioral Health Group had in effect exercised its option to renew the lease for an additional three-year term. As a result, according to Mr. Jones, Behavioral Health Group was in breach of the lease for failing to pay rent for the entire three-year term. Behavioral Health Group filed a cross-motion for summary judgment, asserting that, as a matter of law, the lease was never renewed. It also asserted that Mr. Jones was not entitled to increased rent during the holdover period beyond that provided for under the first renewal option.

The chancery court granted Behavioral Health Group's motion in part and denied Mr. Jones's motion. The court found that Behavioral Health Group had not exercised the option to renew the lease. Rather, the written lease expired on July 31, 2014, and thereafter Behavioral Health Group occupied the premises under a periodic tenancy. The court concluded that Behavioral Health Group gave timely notice of termination and had no further obligation to pay rent.

The court did not rule on Behavioral Health Group's request for an award of amounts that it claimed to have overpaid in rent. Ultimately, Behavioral Health Group voluntarily dismissed its claim, and Mr. Jones dismissed his claim for damages to the leased premises. This appeal followed.

## II.

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *see also Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008). As noted above, both parties moved for summary judgment, supported by statements of undisputed facts. When considering cross-motions for summary judgment, the trial court "must rule on each party's motion on an individual and separate basis." *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 83 (Tenn. 2010). For the respective competing motions, the trial court must view the evidence in the light most favorable to the opposing party and draw all reasonable inferences in the opposing party's favor. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). The court is not to "weigh" the evidence when evaluating a motion for summary judgment. *Martin*, 271 S.W.3d at 87.

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Id.* at 84; *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Martin*, 271

S.W.3d at 84; *Blair*, 130 S.W.3d at 763. Accordingly, we must review the record de novo and make a fresh determination of whether the requirements of Tennessee Rule of Civil Procedure 56 have been met. *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763.

A.

On appeal, Mr. Jones contends that, by failing to deliver possession on July 31, 2014, and paying increased rent, Behavioral Health Group exercised the option to renew the lease for an additional three-year term. We evaluate this contention by examination of the terms of the lease agreement. *See Cain P'ship Ltd. v. Pioneer Inv. Servs. Co.*, 914 S.W.2d 452, 459 (Tenn. 1996) (holding that in commercial lease disputes, the "parties' rights and liabilities should turn on an interpretation of the lease, the conduct of the parties, and rules which are consistent with modern business practice"). Interpretation of a lease agreement is a matter of law which we review de novo with no presumption of correctness. *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006). The "cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties" as expressed in the plain language of the contract. *Id.*; *see Dick Broad. Co. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013). If the language used is unambiguous, we will enforce it as written. *Dick Broad. Co.*, 395 S.W.3d at 659; *Allstate Ins. Co.*, 195 S.W.3d at 611.

"[P]arties are free to negotiate any number of . . . arrangements for renewal options by including specific and pertinent language in the lease agreement." *Norton v. McCaskill*, 12 S.W.3d 789, 794 (Tenn. 2000). The lease in this case specified that "[n]o renewal or extension of this Lease shall be binding on either party unless it be in writing and signed by the Lessor and the Lessee, except as provided in Paragraph 26 hereof." Paragraph 26 of the lease provided, in relevant part, as follows:

> 26. DELIVERY AT END OF LEASE. The Lessee agrees to deliver to the Lessor, . . . the within leased premises at the expiration of this Lease in the same good order and condition as they were when received. . . . Should Lessee remain on the premises after term of this lease, Lessee has the option to renew the lease with a new monthly rent rate of $3,700 (THREE THOUSAND SEVEN HUNDRED DOLLARS) for an additional three years defined herein as the second term. Should Lessee remain on premises after the second term, Lessor has the option to exercise an additional extension (third term) for a period of three years at a new monthly rental rate of $3,811.00 (THREE THOUSAND EIGHT-HUNDRED AND ELEVEN DOLLARS) or a three (3%) increase in monthly rent over the second term monthly rent. Lessee must notify Lessor in writing 90 days prior to renewal and the end of the first and second terms.

4

"An option to renew a lease is a unilateral contract under which the lessee retains an irrevocable right to extend the lease during the option period." *Id.* at 792. But renewal is not automatic. The right to renew will be lost if not exercised in accordance with the lease provisions. *Id.*; *see Am. Oil Co. v. Rasar,* 308 S.W.2d 486, 490 (Tenn. 1957) ("No obligations are on the lessors and no rights could be acquired by the lessee until the lessee or its assignee had complied with the terms of giving notice under this clause.").

The lease executed by Mr. Jones and Behavioral Health Group provided that, absent a written agreement signed by both parties, the lease could only be renewed by a timely written notice by Behavioral Health Group. The undisputed facts establish that there was no written agreement to renew the lease and that Behavioral Health Group did not provide written notice of an intention to renew prior to expiration of the original lease term. Because neither event occurred, the lease was not renewed.

Mr. Jones argues that he waived the written notice requirement. But we find that argument unavailing.

> Waiver is a voluntary relinquishment or renunciation of some right, a foregoing or giving up of some benefit or advantage, which, but for such waiver, he would have enjoyed. It may be proved by express declaration; or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or by a course of acts and conduct, or by so neglecting and failing to act, as to induce a belief that it was his intention and purpose to waive.

*Baird v. Fid.-Phenix Fire Ins. Co.,* 162 S.W.2d 384, 389 (Tenn. 1942) (quoting *Farlow v. Ellis,* 81 Mass. (15 Gray) 229, 231-32 (Mass. 1860)). While a landlord may waive notice, our courts generally require evidence of an express waiver or acceptance of rent payments as specified in the renewal provision and other action consistent with the exercise of the renewal option. *See Am. Oil Co.,* 308 S.W.2d at 490; *Abou-Sakher v. Humphreys Cty.,* 955 S.W.2d 65, 68-69 (Tenn. Ct. App. 1997); *Playmate Club, Inc. v. Country Clubs, Inc.,* 462 S.W.2d 890, 894 (Tenn. Ct. App. 1970); *Noles v. Winn Oil Co.,* 204 S.W.2d 539, 541 (Tenn. Ct. App. 1947).

In this case, Mr. Jones did not expressly declare that he was waiving the written notice requirement for renewal. And Mr. Jones's initial acceptance of rent payments of $3,608 during the holdover period is inconsistent with an intention to treat the lease as having been renewed. His January 2015 demand that Behavioral Health Group pay rent equal to the amount provided for under a subsequent renewal option is also unhelpful to his claim of waiver. In any event, a landlord is free to demand higher rent from a holdover tenant as a condition of continued occupancy. *See AHCI, Inc. v. Lamar Advert. of Tenn., Inc.,* 898 S.W.2d 191, 195-96 (Tenn. 1995). And we do not interpret the mere

demand for higher rent as sufficient manifestation of intent to waive the written notice requirement for renewal.

Even if waiver does not apply, Mr. Jones argues that he was entitled to a presumption of renewal based on Behavioral Health Group holding over, citing *Carhart v. White Mantel & Tile Co.*, 123 S.W. 747 (Tenn. 1909). We conclude that Mr. Jones's reliance on the *Carhart* case is misplaced. In *Carhart*, our supreme court discussed the legal consequences of a tenant's continued occupancy after the expiration of the original lease term when the lease gave the tenant the option to renew at an increased rental but did not specify when or how the renewal option was to be exercised. *Id.* at 750-51. The rule announced in *Carhart* only applies "when the lease does not contain a specific provision prescribing the time and method for exercising the option to extend the lease." *Ellis v. Pauline S. Sprouse Residuary Tr.*, 280 S.W.3d 806, 810 (Tenn. 2009). Here, the parties' lease, specifically paragraph 26, plainly sets forth "how and when" Behavioral Health Group could exercise the renewal option. *See id.* at 813.

Even under *Carhart*, when a lease gives a tenant the option to renew at an increased rent, as this one does, the tenant's payment of the original rent amount during the holdover period rebuts any presumption that the tenant intended to exercise the option. *Carhart*, 123 S.W. at 750-51. And the fact that a landlord accepts the original rent amount by mistake does not change this result.[2] *Id.* at 751. Under these circumstances, the law will not presume that the lease was renewed. *Id.*

Because Behavioral Health Group did not provide notice, written or otherwise, of an intent to renew, we conclude that the lease was not renewed. Thus, the trial court properly denied Mr. Jones's motion for partial summary judgment. Because the written lease expired by its terms on July 31, 2014, Tennessee common law determines the rights and obligations of the parties after that date.

B.

When a tenant fails to deliver possession of the leased premises at the end of the lease term, the tenant becomes a holdover tenant. *Smith v. Holt*, 193 S.W.2d 100, 101 (Tenn. Ct. App. 1945). The landlord has the option of treating a holdover tenant as a trespasser or as a new periodic tenant. *Id.* at 102 (explaining that the landlord "had the right to elect to treat [the tenant's] holding over either as an unlawful detainer or as creating a new tenancy for another like term"). By accepting a holdover tenant's rent

---

[2] The landlord in *Carhart* argued that his failure to require the tenant to pay the increased rent specified in the renewal option was simply a mistake. *Carhart*, 123 S.W. at 751. Likewise, Mr. Jones claims that Behavioral Health Group's payments of $3,608 and then $3,811 in rent during the holdover period, instead of the required $3,700, was simply a mistake. The supreme court has held that "[t]his, however, does not change the rule of law." *Id.*

6

payments, the landlord consents to the creation of a new periodic tenancy. *Id.* at 101. In the absence of a contrary provision in the original lease, the holdover tenant is bound for another like term.[3] *Fly v. Simple Pleasures, Inc.*, M2002-01385-COA-R3-CV, 2003 WL 354467, at *2 (Tenn. Ct. App. Feb. 18, 2003). "[I]f the original tenancy was for a year or more, the new or hold over tenancy is from year to year; if the original term was for less than a year, as a month or a quarter, the new tenancy is . . . measured by such a period." *Smith*, 193 S.W.2d at 101-02. And the tenant is obligated to make rent payments for the full term of the periodic tenancy. *Id.* at 102.

A periodic tenancy automatically continues for successive periods unless one of the parties gives proper notice to terminate. *Periodic Tenancy*, BLACK'S LAW DICTIONARY (10th ed. 2014); *see also Hammond v. Dean*, 67 Tenn. 193, 196 (1874) ("As Drake suffered the second year to commence without putting an end to the relation, Hammond was entitled to the whole of that year's rent . . . ."). Notice to terminate a year-to-year tenancy "must be given six months before the end of the year." *Smith*, 193 S.W.2d at 102; *accord Hayes v. Schweikart's Upholstering Co.*, 402 S.W.2d 472, 479, 484 (Tenn. Ct. App. 1965). If timely notice is provided, the periodic tenancy will terminate at the end of the period. *Shepherd v. Cummings*, 41 Tenn. 354, 356-57 (1860).

When Behavioral Health Group continued to occupy the leased premises and Mr. Jones accepted rent, a periodic tenancy was created. Because the original lease term was for three years, the resulting periodic tenancy was year-to-year. *See Smith*, 193 S.W.2d at 101-02. The first year of the periodic tenancy ended on July 31, 2015. When neither party gave timely notice to terminate during the first year, the periodic tenancy continued for another year or until July 31, 2016. To terminate the periodic tenancy, Behavioral Health Group was required to give notice six months prior to end of the term. Thus, Behavioral Health Group's notice of termination on October 30, 2015, could not serve to terminate the periodic tenancy on November 30, 2015. Rather, Behavioral Health Group's notice terminated the periodic tenancy on July 31, 2016, the end of the second year. *See Shepherd*, 41 Tenn. at 357. And Behavioral Health Group remained liable for rent through that date.

## III.

The trial court's judgment is affirmed in part and reversed in part. We affirm the denial of the motion of Mr. Jones for partial summary judgment, and we reverse the grant of summary judgment to Behavioral Health Group. This case is remanded for entry of judgment in favor of Mr. Jones for the amount of rent owed for the remainder of the periodic tenancy. On remand, the trial court should also determine whether Mr. Jones is

---

[3] The original lease may include a provision specifying that a holdover tenancy will be for a different duration. *Fly*, 2003 WL 354467, at *3. For example, in *Fly*, the lease provided that any holdover tenancy would be month-to-month. *Id.* at *2.

entitled to an award of prejudgment interest, as requested in the complaint. *See* Tenn. Code Ann. § 47-14-123 (2013).

_____
W. NEAL MCBRAYER, JUDGE